**Ben STONE, Sr., (Plaintiff) Respondent,**

v.

**Gilmore ENGLER, (Defendant) Appellant.**

**No. 47934.**

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

Motion for Modification, Rehearing or for Transfer to Court en Banc Denied Sept. 11, 1961.

William M. Corrigan, St. Louis, for appellant.

William R. Kirby, Kirby & Lee, St. Louis, for respondent.

HYDE, Judge.

Action for $50,000 damages for personal injuries sustained in a collision of automobiles at an intersection. The jury's verdict was in favor of defendant but the trial court sustained plaintiff's motion for new trial on the ground of error in giving Instruction 7 at defendant's request. Defendant has appealed from that order.

Defendant contends Instruction 7 was proper and also that plaintiff failed to make a submissible case. Therefore, it first will be necessary to state the facts shown by the

evidence viewed most favorably to plaintiff. The negligence submitted was failure to keep a careful and vigilant lookout to discover the automobile in which plaintiff was riding; and this was submitted in plaintiff's Instruction 2 which he says was substantially the same as the one approved in Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, 24.

The collision occurred in St. Louis County at the intersection of Natural Bridge Road (on which the car in which plaintiff was riding was being driven west) and Jennings Station Road (on which defendant was driving south). Natural Bridge was marked as a State highway with pavement 56 feet wide and had three lanes for westbound traffic. The Jennings pavement was 40 feet wide and had two lanes for southbound traffic. The approach to Natural Bridge on Jennings was down hill. Jennings ended at Natural Bridge but by making a slight jog west Kienlen Avenue would be reached which went south from Natural Bridge. This made a wide, irregular intersection and it had electric traffic signals governed by the flow of traffic. There was a building on the northeast corner of the intersection, the front of which was not a square corner but followed an angle made by the intersection roadway and sidewalk. There were signs showing the speed limit as 30 miles per hour. Cars coming south on Jennings were not permitted to make a left-hand turn on Natural Bridge to go east but were required to go across and enter from the south over a partial cloverleaf entrance. It was shown that from a point 49 feet north of the crosswalk on Jennings the field of vision east on Natural Bridge would be 57 feet.

On Sunday morning, November 3, 1957, at 6:00 a. m., plaintiff went with his daughter and son-in-law to take his grandson to the Normandy Hospital, in a 1952 Chevrolet. The boy's tonsils had been taken out on Saturday and he started hemorrhaging early Sunday morning. Plaintiff's son-in-law, Clarence Cravens, was driving, Mrs.

Cravens was sitting on the right side of the front seat with the boy in her lap, and plaintiff was sitting on the back seat wringing out wash cloths in a pan of ice water and handing them to Mrs. Cravens to put on the boy to control bleeding. When they reached Natural Bridge and Vandeventer they met a police car, with two officers in it, which "conveyed them west on Natural Bridge." The police car operated its flashing lights and its siren as it proceeded in front of the Cravens car. Its driver said the distance between the Cravens car and his police car much of the time was 35 to 40 feet, but at times the Cravens car was lagging farther back. He also said traffic was very light at that time, although Natural Bridge normally was a heavily traveled highway; and that between Vandeventer and Jennings they passed through several intersections controlled by traffic signals but that at none of them was the light red. Approaching Jennings the police car driver said his car was going between 25 and 30 miles per hour and was decreased to 15 miles per hour going through the intersection. Plaintiff's estimate was that the Cravens car was not going faster than 30 miles per hour. He said the first he knew of the collision (except for feeling brakes applied) was when he woke up in the hospital that afternoon. Plaintiff, kept busy with the wash cloths, did not notice traffic signals at any intersection and did not speak to the driver.

The driver of the police car, while going through the intersection, saw a car coming south and could not estimate its speed but estimated it was about 200 feet north. He estimated the police car was about 200 feet west of the intersection when he heard the crash of the collision. When he was 30 to 40 feet from the intersection he saw the signal light was red at Jennings; and when he started to slow down for the intersection (about 30 feet east), he judged the Cravens car was 60 to 80 feet back of him. (His police report stated he went through the intersection at 25 to 30 miles per hour and that the Cravens car was 200 feet be-

hind him.) Cravens said that he traveled about four car lengths behind the police car between 30 and 35 miles per hour; that all signal lights were green between Vandeventer and Jennings; that at no time was the police car 200 feet in front of his car; that the police car slowed down a little approaching Jennings and he slowed down a little too; that the cars were in the lane next to the center of the highway; and that his car was about four car lengths behind the police car when it began to slow down for the intersection. He said there was little traffic and he did not think he saw another car between Jennings and the last intersection east and did not see any on Jennings. He followed the police car through the red light, blew his horn before entering the intersection and then saw defendant's car about a car length and a half back from the curb line on Jennings when his car was about the same distance back from the curb line on Natural Bridge. At that time, the police car was leaving the intersection. He said he put on his brakes and cut his wheels to avoid defendant's car but did not see it slow up any or swerve in either direction.

Plaintiff also offered statements from defendant's deposition that the first time he looked to his left was when he was crossing the street, approximately on Natural Bridge starting across, with the front end of his car south of the curb line; that he had heard the siren when he was a block away and soon thereafter had seen the police car go through the intersection; and that when he saw the Cravens car, defendant's car was going "approximately, fifteen, twenty miles an hour—fifteen probably * * * closer to fifteen than twenty." Plaintiff also had evidence that a 1952 DeSoto could be stopped in 27 feet at 15 miles per hour and in 40 feet at 20 miles per hour. (These estimates allowed for three-quarter second reaction time.) It was shown that the point on Jennings (49 feet north) from which defendant could see 57 feet east on Natural Bridge was 95 feet north of the center line of Natural

Bridge; and that the point on Natural Bridge at which plaintiff could have seen a car coming south was 90 feet east of the center line of Jennings. Plaintiff also had expert testimony that a safe turn could be made at 15 miles per hour in a radius of 21½ feet and at 20 miles per hour in a radius of 37%0 feet.

Defendant says there was no substantial evidence that he could have avoided the collision by stopping, slackening or swerving his car if he had been keeping a proper lookout. The basis of this contention is defendant's claim that there was no substantial evidence of stopping distances because it was not shown whether the pavement was wet or dry, whether the tires were new or old, nor the weight or condition of the automobile. Defendant also says the conclusions of plaintiff's witness were based on the use of a 1952 DeSoto when there was evidence that his car was a 1953 DeSoto. Defendant further says there was no evidence to show he could have avoided the collision by slackening or swerving and that it was not shown that necessary stopping distances could be achieved with safety to defendant, the surrounding buildings or pedestrians.

Plaintiff cites Witt v. Peterson, Mo.Sup., 310 S.W.2d 857, 860, in which we said: "It is the duty of a motorist entering an intersection to exercise the highest degree of care to maintain a careful and vigilant lookout ahead and laterally, and to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. For where one is charged with the duty to look, and to look is to see, he must be held to have seen what looking would reveal. * * * A green light does not relieve of this duty, nor does it confer an absolute right to proceed across the intersection regardless of the movement of other traffic. The motorist is not entitled to rely solely on the favorable signal; nor is he entitled to drive blindly into the intersection without looking. The duty of care to be exercised

remains commensurate with the circumstances, one of which, of course, is the green light in his favor. * * *" Certainly this would be true where a police car was going through with siren sounding and followed as closely by the Cravens car as plaintiff's evidence showed. According to plaintiff's evidence, defendant had as much as 80 feet in which to stop after he could have seen the Cravens car following the police car into the intersection and could have stopped in half that distance at his highest estimate of his speed. Plaintiff also had evidence from which the jury reasonably could have found that defendant had the ability to avoid a collision by turning after he should have seen the Cravens car, in the exercise of the highest degree of care, east of Jennings. Defendant's statement was that he was going nearer 15 than 20 miles per hour and of course he could have both slowed and turned. There were two vacant north lanes of Natural Bridge to go into since the Cravens car was in the center lane.

As to defendant's objection concerning street, weather and car conditions, plaintiff's expert's estimates were on the basis of dry weather and good condition. Defendant said his brakes were in good condition and there was no evidence of bad weather. It was said in Brockman v. Robinson, Mo.App., 48 S.W.2d 128, 130: "A second objection to the testimony of this witness was that the condition of the appliances upon the truck was not shown; that is, whether the same were in proper working order at the time. The rule is, unless the contrary is shown, such facts as to the braking apparatus and condition of the truck being in good order may be presumed. Plaintiff was entitled to avail himself of such presumption in asking the hypothetical question of the witness, and the witness was justified in so assuming, in drawing his conclusion and making his answer." We consider this also to be true as to weather conditions. As to including safety to others in stopping, when no such objection was made at the trial, see Burton

v. Chicago & Alton Ry. Co., 176 Mo.App. 14, 162 S.W. 1064, 1067. Moreover, defendant had no passengers and there was no evidence that there were any pedestrians present. Certainly there was plenty of room to miss the buildings. Likewise, as to the model year of defendant's car, there was no such objection made at trial and nothing appears to show there would be any substantial difference in stopping distance between the two models. Tables (considered reliable as to stopping distances at different speed) do not show makes and models no doubt because it is known there is no great variance in stopping ability with most modern automobiles. See 9C Blashfield Automobile Law 413, Sec. 6237. We conclude that there was substantial evidence as to stopping and turning distances and hold that the court properly submitted the case to the jury.

We also conclude that the trial court's order granting a new trial should be affirmed. It is the rule that we are more liberal in upholding the trial court's action in granting a new trial than in reversing and remanding a judgment on the same ground on appeal, especially when the exercise of judicial discretion is involved. Trump v. Ballinger, Mo.Sup., 317 S.W.2d 355; Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563. Some of the reasons adopted by the trial court as grounds sustaining the motion for new trial because of giving Instruction 7 were as follows: That said instruction gave the jury a roving commission; that said instruction required the exercise of a higher degree of care by the plaintiff than required by law; that the facts alleged as constituting contributory negligence were not supported by competent evidence; that said instruction is contradictory, confusing and misleading; and that said instruction is in conflict with the other instructions of the Court.

In determining whether this was a proper instruction, we consider the evidence most favorable to defendant and of course he is not bound by plaintiff's evidence as to

what he was doing. However, defendant had no evidence as to what plaintiff was doing or where he was riding or how Cravens had been driving previously. Defendant said he saw the police car go through the intersection going 60 to 75 miles per hour when he was one block north (he also said he could have been half a block away when he saw it); that at that time the light was green for southbound traffic; and that it continued to show green as he approached at about 20 miles per hour. Defendant also had evidence that the Cravens car was 300 feet behind the police car going 55 miles per hour. Defendant says his evidence shows the following acts of misconduct, which plaintiff should have seen and acted to prevent, namely: "a. Driving 55 miles per hour on an ordinarily heavily traveled main highway in an urban-business area; b. Driving 55 miles per hour in a 30 mile speed zone; c. Approaching a heavily traveled main intersection controlled by electric traffic signals at 55 miles per hour; d. Failing to look to see the condition of the traffic signal, which could be seen at a minimum distance of 450 feet east of the intersection, until his automobile was within 6 car lengths (90 feet) of the intersection; e. Following a police car in an 'emergency' situation at a distance of 300 feet and at a speed of 55 miles per hour." However, all of these concern only the near approach to the intersection and show nothing about the driving of Cravens previously.

Instruction 7, after stating the duty of a guest, required a finding of the conceded fact of an electric traffic signal at the intersection and other findings as follows: "[A]nd if you find that at a time when the westbound Chevrolet automobile in which the plaintiff Ben Stone was riding was approximately 450 feet east of Jennings Road said Chevrolet was being operated at a speed of approximately 55 miles per hour and that such speed was a high and dangerous rate of speed under the circumstances then and there existing, and that at said time the electric traffic signal at said intersection was 'Red' for westbound

traffic on Natural Bridge Road, and if you find that Ben Stone in the exercise of ordinary care could and should reasonably have anticipated that if the automobile in which he was riding was driven through said intersection wthout stopping and in violation of said 'Red' signal light that there would be danger that the automobile in which he was riding would collide with traffic properly in said intersection, and if you find the matters referred to above were known to Ben Stone, or in the exercise of ordinary care should have been reasonably manifest and known to him, and that Ben Stone had an adequate and proper opportunity thereafter, in the exercise of ordinary care for his own safety, to have warned and requested the driver of said Chevrolet to stop his automobile before entering the intersection and observe the electric traffic signal, and by so doing thus and thereby to have influenced the situation for safety and by so doing to have avoided the collision mentioned in the evidence but that he failed so to do, and in so failing the plaintiff, Ben Stone, failed to exercise ordinary care for his own safety and was negligent, and that such negligence directly caused or contributed in any degree to cause the collision * * *."

Plaintiff says this instruction required a higher standard of duty of plaintiff than should have been required of a rear seat passenger engaged in helping to arrest the hemorrhaging of his grandson. Our view is that the trial court at least could properly have found that it was confusing and misleading as to the standard of duty of plaintiff because it seemed to require plaintiff to keep a lookout at all times regardless of where he was riding and what he was doing or how the driver had been driving. In the first place, it completely ignored the conceded fact that the Cravens car was following a police car and moreover required no finding as to the distance it was behind the police car which was an important factor in determining the issue of defendant's negligence as well as contributory negligence. In the next place,

it completely ignored the emergency situation, which was the reason for the police escort, and seemed to require finding on plaintiff's negligence as though he were a passenger in a car under ordinary circumstances with nothing to do but look around without any evidence to so show. Finally, it authorized a finding of plaintiff's negligence on a speed of 55 miles per hour 450 feet east of Jennings Road, when the traffic signal was red, without regard to how Cravens had been driving previously or his police escort and what they had been doing.

Both parties cite Happy v. Blanton, Mo. Sup., 303 S.W.2d 633; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642; and Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, which state the duty of a guest passenger. See also A.L.I. Restatement of Torts, Sec. 495. In the Happy case (303 S.W.2d loc. cit. 638) we held erroneous an instruction that required a guest, riding in the front seat, "to maintain a lookout and warn the driver of the automobile in which she was riding of dangerous situations she could have seen if she had maintained a lookout even though the driver of the automobile had been exercising the highest degree of care and plaintiff had no reason to believe he would not continue to do so." We held in that case that: "Under the circumstances there was no duty on plaintiff to maintain a lookout for automobiles approaching the highway on private driveways from the side." In the Ketcham case (283 S.W.2d loc. cit. 647) we held it was not error to refuse an instruction submitting contributory negligence of a guest for failure to warn when the car was driven onto a highway and struck by an approaching truck. We said there was no substantial evidence of lack of caution on the part of the driver that was or should have been apparent in the exercise of ordinary care to the plaintiff therein, riding in the back seat. We held: "Therefore, there was no duty on her part to maintain a lookout for dangers. The dangerous situation was neither known nor reasonably manifest to plaintiff, so there

was no substantial evidence of contributory negligence on her part." Since the court herein granted a new trial on the ground (among others) that Instruction 7 was confusing and misleading, which we consider a proper exercise of its discretion, it is not necessary to determine whether or not there was any substantial evidence of contributory negligence on the part of plaintiff.

Affirmed and remanded.

All concur.