Francis C. BASLER, Plaintiff-Respondent,

v.

Arthur Alois HUCK, Defendant-Appellant.

No. 33064.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Roberts & Roberts, Raymond R. Roberts, Clinton Roberts, Farmington, for defendant-appellant.

Smith & Colson, David L. Colson, Farmington, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff obtained a verdict and judgment for $1,000 against defendant for the damages to his tractor and mower which resulted when his left-turning equipment was struck by defendant's overtaking automobile. Defendant's sole point on appeal is that the trial court erred in giving a verdict-directing instruction containing a "look-out submission" because it was not supported by the evidence.

In determining whether plaintiff's instruction was supported by the evidence we must, of course, consider the evidence in the light most favorable to plaintiff and give him the benefit of all favorable inferences reasonably to be drawn from all the evidence; and disregard defendant's evidence unless it tends to support plaintiff's claim. Burns v. Maxwell, Mo., 418 S.W.2d 138. The evidence most favorable to the plaintiff was that on July 23, 1966, at about 2:00 P.M., Richard J. Basler, his son, was driving the tractor, and pulling the mower, southwardly on Highway 61, about 3 miles south of St. Genevieve, at a speed of approximately 17 to 20 miles per hour. In the area involved the highway is straight and level with good visibility both north and south of the point of collision. Defendant, accompanied by Lester Stretch, was also driving southwardly on Highway 61, at a speed of about 60 to 65 miles per hour, and first saw plaintiff's equipment ahead of him when he was 200 to 300 yards to its rear. Richard intended to turn left onto a dirt road which led into a big field, and testified that when he was about 100 to 150 yards north of the dirt road he looked back and saw defendant's car approximately 250 yards to his rear. When he was about 50 yards from the point where he intended to make his left turn he again looked back and saw defendant's car about 100 to 125 yards to his rear. Apparently while traversing the intervening distance he had started to signal with his hand his intention to make a left turn, because when asked what he did when 50 yards from his intended point of left turn he answered, "At that time I, I looked to my rear and I still had my hand signal on * * *." He explained that by the term "hand signal" he meant he had his left hand and arm straight out to his left.

Richard further testified that he slowed his tractor to a speed of about 10 to 12 miles per hour and stood up, preparatory to making his turn, still with his arm extended to his left. When about 15 yards from his turn off point and the point of impact he started to make a gradual turn of 45° to his left, while continuing to signal. As he did so he looked back over his left shoulder and saw defendant's car approximately a car length away. The front wheels of the tractor, he stated, were nearly to the east edge of the concrete roadway and the rear of the tractor not all of the way out of the southbound lane. As he looked back Richard also heard the defendant step on the gas to pass, and he attempted to turn back to his right but only got the front wheels of the tractor straightened before the impact occurred. According to Richard, defendant's car struck the

right rear of the mower, which in turn hit the tractor, spinning it in a complete circle and causing Richard to be thrown off.

Defendant testified that after first sighting the tractor and mower from a distance of 200 or 300 yards he let up on the gas and coasted to a speed of 30 to 35 miles per hour; that when he had approached to within about 20 yards of the tractor and mower he accelerated, pulled into the northbound lane, and started to pass the plaintiff's equipment to its left; and that when he was about a car length away Richard started to make a left hand turn. Both defendant and Stretch, his passenger, testified that they did not see Richard give any kind of a turn signal.

Defendant argues that there was no direct evidence that he failed to keep a lookout, but admits: "* * * There is an inference, however, of such a failure from the fact that the accident occurred and that Richard Basler testified he signaled his turn. Certainly, in determining whether an Instruction is prejudicial, the Appellate Court must consider the evidence in a light most favorable to the Instruction. Thus, the Appellate Court must accept Richard Basler's contradicted testimony that he signaled a left turn. It can be inferred from these facts that Defendant, if keeping a careful lookout, should have seen this signal and avoided the accident. However, in Chandler v. Mueller, 377 S.W.2d 288 the Supreme Court held that such an inference is not fair, reasonable, or permissible, nor can it amount to substantial evidence."

Factually, there is no similarity between Chandler and this case, nor is what was there held applicable to the instant case. In that case, involving a collision between two automobiles approaching head-on, the defendant had no direct proof of plaintiff's failure to keep a lookout. Nevertheless, he gave a contributory negligence instruction on such supposed failure, and when the trial court set aside the judgment in his favor defendant contended on appeal

that the jury could draw such an inference from the plaintiff's testimony. The Supreme Court reviewed the plaintiff's testimony at length, which was to the effect that plaintiff had at all times, up to and including the moment of impact, observed the defendant's weaving car, and held that it would not support the inference defendant sought to draw. In short, defendant urged that without any contradicting evidence the jury could draw an inference directly contrary to plaintiff's testimony.

That is not the situation in the instant case. Here defendant and Stretch testified that they had not seen Richard give a signal, from which defendant wanted the jury to infer that none had been given. But in contradiction, Richard testified he had signaled, and if the jury found that he had, as it obviously did, it could (and did) logically infer that defendant and Stretch had failed to see it.

██ That such an inference may be drawn is supported by the case of Counsell v. Rickenbaugh, Mo., 431 S.W.2d 86, the applicable authority governing this case. The facts there concerning the collision are practically identical with those in the instant case, but the status of the parties was reversed in that plaintiff was the driver of the overtaking car which struck defendant's left-turning car. There, as here, the operator of the left-turning car testified he had signaled his intention to turn. There, as here, the driver of the overtaking car stated that he had not seen the signal. There, as here, an instruction was given incorporating a lookout submission. And there, as here, the opposing party contended there was no evidence to support such a submission. In rejecting that contention the Supreme Court held that the jury could infer that plaintiff had failed to see the signal given, and that (431 S.W.2d 89): "Not only is there a duty to keep a proper lookout on the highway in the direction one is traveling, but a failure to see what a person in the exercise of the highest degree of care for himself

and others would have seen, is as much negligence as is failure to look at all. See v. Kelly, Mo.App., 363 S.W.2d 213; Jackson v. Skelly Oil Company, Mo., 413 S.W. 2d 239."

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.