**Diane Adair PAGE, pro ami, Respondent,**

**v.**

**James BAXTER, Appellant.**

**No. KCD 26057.**

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

Morris, Foust, Moudy & Beckett, Thomas B. Sullivan, III, Russell D. Jacobson, Kansas City, for appellant.

Crouch, Crouch, Spangler & Douglas, James E. Thompson, Jr., Harrisonville, for respondent.

Before DIXON, C. J., PRITCHARD and SOMERVILLE, JJ., and MARSH, Special Judge.

PER CURIAM:

Plaintiff's suit for personal injuries sustained in a collision between the defendant's moving vehicle and the parked car in which she was a passenger resulted in a verdict awarding her $5,000. The defendant-appellant raises two points: first, the sufficiency of the evidence to support the verdict upon plaintiff's submissions of failure to keep a proper lookout or failure to swerve or stop; and, second, excessiveness of the verdict.

Plaintiff's submissions were in the alternative, and the parties agree evidence must appear to support the submission on the alternate grounds. MAI Committee Notes on Use, under MAI 17.02, Missouri Approved Jury Instructions (2d Ed.), page 139. In determining whether there was sufficient evidence to support the submission of the case on plaintiff's theories, we consider the plaintiff's evidence in a light most favorable to her and disregard, except insofar as it aids the plaintiff, the defendant's evidence. Basler v. Huck, 435 S.W.2d 742 (Mo.App.1968). So considered, the following facts emerge.

Plaintiff was seated in the back seat of James Miller's car on the night of December 6, 1969, as it was parked on the County Home Road in rural Cass County. The car was parked on the far right-hand side of this gravel road with its engine off and its parking lights on. There was a minimum of 18 feet of traveled surface to the left of the parked car. The night was cold, and light snow had fallen intermittently, but without sizeable accumulation. Miller's car was pointed northward on this north-south road and had been parked there for approximately a half-hour before the accident occurred. During that time, only one vehicle passed the Miller car headed southward. That vehicle had passed sometime between two and fifteen minutes before the impact, and was being driven at a high rate of speed. The occupants of the Miller car testified that visibility was good enough that night to see the lights of the southbound vehicle coming down the road for some distance. Also, the occupants testified that there was room enough in the roadway for two cars to pass each other in the space left by Miller's parked car, the evidence being that his car was over as close as possible to the road ditch and only two to three feet onto the gravel road. Miller's car was parked on a fairly level stretch of road some 100 to 150 yards north of a hillcrest. The occupants of the car had no warning from Baxter's car, as they heard no sound of tires squealing or of a horn before impact.

Defendant Baxter testified that he was driving 20 to 25 miles per hour northward on County Home Road and was encountering no difficulty with handling his car due to the snow. His headlights were on, and he could see fairly well. He claimed he was driving so as to be able to stop within the range of his headlights. As he came over the hillcrest, Baxter claimed to have met a vehicle traveling at a high rate of speed coming down the center of the road. He testified to taking evasive action which caused his rear wheels to slide into a ditch which ran along the right side of the road. Baxter did not apply his brakes as he approached the oncoming vehicle, but only relaxed his pressure on the car's accelerator. He testified that as he slid partially into the ditch he noticed the Miller car only some three or four car lengths ahead of him. He attempted to stop or swerve but was unable to do so.

The Baxter car's right front fender struck the Miller car's left rear causing the Miller car to be partially pushed into the ditch. Baxter admitted consumption of two mixed drinks and a beer over a period of several hours; he also had a bottle of

beer in his hand when he emerged from his car after impact.

It is clear that when failure to keep a lookout is the theory of plaintiff's submission that the evidence must disclose that the defendant saw or could have seen *and* that at the time and place where he saw or could have seen there must have been an ability to avoid the collision. Miller v. St. Louis Public Service Company, 389 S.W.2d 769, 772 (Mo.1965), where the rule is succinctly stated.

"So, in order to show that a negligent failure to keep a lookout proximately caused the accident or injury, it is necessary to have further evidentiary facts that the person charged with such negligence could have acted in some manner so as to avoid the accident or injury."

Creech v. Riss & Company, 285 S.W.2d 554, 562 (Mo.1955) and Moore v. Ready Mixed Concrete Company, 329 S.W.2d 14, 25 (Mo. banc 1959) support the analysis and statement of the rule set forth in Miller, supra.

Such evidence must include not only the means and appliances to so avoid but also the existence of sufficient time and distance to take effective action. Stegall v. Wilson, 416 S.W.2d 658, 662 (Mo. App.1967).

Putting aside for the moment the exculpatory portion of the defendant's testimony, since the jury had a right to and apparently did not believe it, we look to the remaining evidence and its legitimate inferences to determine if a submissible case of failure to keep a lookout is made. Plaintiff has cited Miller, supra, for the proposition that the purpose of the lookout duty is to apprise the operator of danger and with that statement we agree. The real question here is when the defendant could òr should have seen.

There is *no* evidence as to how far the defendant or anyone else could see the taillights of the Miller car on that dark snowy night. Second, there is no evidence as to how long or how far it would take the defendant to swerve and stop his car. Thus, the evidence in this case does not satisfy either test of the rule set forth above. The only testimony as to stopping distance is that he could have stopped within "range" of *his* headlights. They were not even shown to be "normal" in range. There is simply a vacuum in the evidence as to when the defendant could or should have seen and what he could *thereafter* have done to prevent the collision.

Plaintiff attempts to justify the submission by pointing to the evidence which indicates that there was nothing between the hillcrest and the point where the collision occurred to prevent the defendant from seeing the Miller car. Plaintiff asserts that defendant traveled 240–400 feet before he saw the vehicle. That argument ignores the dark and snowy night. There is no evidence that anyone could have seen the taillights on the Miller car for any distance, except the defendant's testimony that he *did* see them when three to four car lengths away. Thus, even if defendant is charged with an obligation to act at that time, there is no evidence he could have acted to avoid the impact.

The plaintiff also asserts that defendant is charged with seeing what he should have seen, citing See v. Kelly, 363 S.W.2d 213 (Mo.App.1962). In that case, there was evidence from the plaintiff that *he could see* and the defendant said he *did see* the plaintiff's car. The case does not support the plaintiff's assertion here that defendant could have seen.

We cannot say on this record as a matter of common knowledge that a person in defendant's position should have seen the taillights of the Miller car in time to have afforded some opportunity to avoid the collision.

In view of what has been said, it is unnecessary to rule on the issue of the alternate submission of failure to stop or

swerve. It is apparent, however, there likewise exists no evidence of a present ability to stop or swerve in time to avoid the collision. Evidence of ability to stop or swerve *after* the duty arises is essential to such a submission. Thaller v. Skinner and Kennedy Company, 307 S.W.2d 734 (Mo.App.1957).

Since this case must be reversed, we need not deal with appellant's claim of excessiveness. There is no indication in this record that plaintiff is unable to rectify the defects of his submission, and the cause should be remanded for a new trial.

Reversed and remanded for a new trial.