Sam JENKINS, Plaintiff-Respondent,

v.

Madge JORDAN, Administratrix of the Estate of Bob Dave Jordan, Deceased, Defendant-Appellant.

No. 11221.

Missouri Court of Appeals,
Southern District,
En Banc.

Dec. 17, 1979.

Rehearing Denied Jan. 11, 1980.

Wayne C. Smith, Jr., Smith & Cooley, Springfield, for plaintiff-respondent.

E. C. Curtis, Phillip R. Garrison, Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for defendant-appellant.

PREWITT, Judge.

Plaintiff brought an action for personal injury against Bob David Jordan (Jordan). While the matter was pending in the trial court, Jordan died and his administratrix was substituted. Following a jury verdict and judgment in plaintiff's favor, defendant appeals.

Plaintiff's injuries were received as a result of an occurrence on September 28, 1970, on Highway 32 in Cedar County, Missouri. Highway 32 runs generally east and west and is slightly downhill going west, at the place where the incident occurred. The blacktopped portion of the highway is 20 feet wide. Plaintiff was operating an automobile in a westerly direction on Highway 32 when the engine stopped due to mechanical problems. He pulled onto the right or north edge of the highway with the front wheels off the highway and the left rear extending some 2 to 3 feet onto the paved portion of the roadway. There is a shoulder at that point approximately one and one-half foot wide and then a ditch. It was dark and plaintiff left the headlights and taillights burning on his vehicle. He got out, opened the hood, and looked at the engine. He then went to the trunk and got a quart of oil. While plaintiff was pouring the oil in the car, a Mr. Chism stopped his truck across the road from plaintiff, heading east. There was evidence that Chism's vehicle was not blocking any part of the traveled portion of the road. Chism also left his vehicle's lights on and there was evidence that they were shining down the ditchline and not directly toward oncoming traffic. After plaintiff had put the oil in the car, he put the oilcan back in the car. While closing the trunk, one of the rear lights on the left side went out. There were two lights on each side of the rear of the car and one of the lights on the left-hand side remained lit, as well as both on the right-hand side. Shortly thereafter, plaintiff saw the lights of Jordan's car heading west about a half mile away. When Jordan was about 600 feet away, plaintiff started flashing a flashlight toward Jordan. Jordan's vehicle continued to proceed at about the same speed and when it was about 300 feet away, Mr. Chism saw it was not going to slow down and went toward his vehicle. Plaintiff continued to attempt to flag Jordan down, plaintiff said, to keep the vehicle from hitting his car and keep someone from getting hurt. Chism had not reached his truck at the time the collision occurred. When Jordan's car was about a hundred feet away, plaintiff stood between the door and the left rear wheel of his car until the accident occurred. He does not know how close he was to the car. He was 6 to 7 feet from the north edge of the

pavement. He waved his flashlight until the impact. Jordan's car struck plaintiff's vehicle. Whether plaintiff received his injuries from being struck by Jordan's car, or by his own being knocked into him, is not clear. By deposition, Jordan testified that previous to the collision he was going 40 to 45 miles an hour. He never saw plaintiff or plaintiff's car before colliding with it. Jordan said he was blinded by the lights of a car he was meeting. Both cars dimmed their lights and then he immediately hit plaintiff's car. Jordan did not see any other car near the scene of collision except the car which blinded him. It was moving east. Jordan said his car had good brakes and was in good mechanical condition, including the brakes and lights. There was no direct evidence as to weather conditions or the condition of the pavement at the time of the collision.

Defendant's first point is that the trial court should have sustained defendant's motion for directed verdict, as no submissible case was made because: A. There was no evidence of negligence on the part of Jordan which was the proximate cause of plaintiff's injuries, and B. The evidence showed that plaintiff was contributorily negligent as a matter of law.

In determining if there is sufficient evidence to support plaintiff's submission, we consider the evidence in the light most favorable to plaintiff. Following this guideline, we first consider whether there was evidence that Jordan was guilty of negligence which could be the proximate cause of plaintiff's injuries.

As plaintiff submitted his case on the theory of failure to keep a lookout, the evidence must disclose that the defendant saw or could have seen in time to have avoided the collision. *Hill v. Barton,* 579 S.W.2d 121, 128 (Mo.App.1979). A submissible case may be made on failure to keep a lookout by circumstantial evidence. *Williams v. M. C. Slater, Inc.,* 590 S.W.2d 357, (Mo.App.1979). There was evidence that there was nothing to obstruct the shining of lights toward a car as it comes from the east going west. Plaintiff saw Jordan's car when it was a half mile away and watched it at least the last 600 feet before the collision. Defendant contends that there was no evidence that Jordan could have seen plaintiff, his vehicle or its taillights or headlights, or the flashlight plaintiff was waving. Defendant claims that Jordan was blinded by the lights of a moving car that he was meeting. The evidence was in dispute as to whether there was any such car. The jury did not have to believe that he was meeting another car or that he was blinded. Plaintiff testified that the Chism vehicle was parked completely off the roadway, with its lights shining down the ditchline and not so they would shine in Jordan's eyes. If Jordan was not blinded, no reason appears why he could not have seen some indication of possible danger. We believe the jury could properly have found that Jordan did not keep a proper lookout.

Defendant also contends that even if Jordan could have seen plaintiff, his flashlight, or plaintiff's car or its lights, there was no evidence that Jordan could have seen them in sufficient time to have avoided a collision. Defendant puts emphasis on *Page v. Baxter,* 503 S.W.2d 32 (Mo.App. 1973), in her contention that no submissible case on failure to keep a lookout was made by plaintiff. There the court held the evidence insufficient as not showing how far the defendant could see "on that dark snowy night". Here there was no evidence of anything which might obstruct visibility or make the visibility less than normal and we do not view the finding of insufficient evidence in *Page* as persuasive in this determination. Where there is no evidence of adverse weather, it is presumed to be good. *Stone v. Engler,* 349 S.W.2d 38, 41 (Mo. 1961).

Even if we accept defendant's argument that the evidence was insufficient to show the distance that plaintiff's flashlight or his vehicle's taillights could be seen, there was still sufficient evidence to make a submissible case. Section 304.350, RSMo 1969 (now § 307.060, RSMo 1978), subparagraph (1), requires that on high beam, head-

lights be "so aimed and of such intensity as to reveal persons and vehicles at a distance of at least three hundred and fifty feet ahead . . . ." In response to a question about the condition of his automobile, Jordan replied that he had owned it about a week and a garage had checked its brakes and lights and "undoubtedly, it was in good shape". Under these circumstances it will be presumed that Jordan's vehicle met the minimum statutory standards for headlights. *Brown v. Wooderson*, 362 S.W.2d 525, 529 (Mo.1962); *Lemken v. Brooks Truck Lines, Inc.*, 322 S.W.2d 803, 805–806 (Mo.1959). Viewing the evidence most favorable to plaintiff, Jordan was not meeting a moving vehicle, and there was no reason that he did not have his lights on high beam. His own testimony confirms this as he stated he dimmed his lights immediately before the collision. We think that the evidence is sufficient to have shown that with his automobile's lights Jordan could have seen plaintiff or his vehicle at least 350 feet away.

Having the ability to have seen plaintiff at 350 feet, we must determine if within that distance Jordan had the means to avoid the collision. There was no evidence of stopping or swerving distances. While we cannot judicially note exact distances, there have been instances in which our courts have taken notice of certain limits within which a stop or a swerve could be made. *Nelms v. Bright*, 299 S.W.2d 483, 490 (Mo. banc 1957); *Lemken v. Brooks Truck Lines, Inc.*, supra, 322 S.W.2d at 805; *Johnson v. Bush*, 418 S.W.2d 601, 608 (Mo. App.1967). *Nelms* noted that judicial notice has been taken that an automobile traveling 45 to 50 miles per hour can be stopped within 300 to 350 feet; *Lemken* that a swerve of 2 to 3 feet can be made in 25 to 30 feet at 20 miles per hour; *Johnson* that a vehicle at 50 miles per hour going downhill could stop within 350 feet.

█ There was evidence that plaintiff's car was parked with its left rear corner 2 to 3 feet out in the roadway, and plaintiff was 6 to 7 feet from the north edge. This would indicate that a swerve of

3 feet, if Jordan was on the right edge of the paved portion, would have avoided plaintiff's vehicle and 7 feet would have avoided plaintiff. The mobility of a car and the quickness with which it may be swerved, and what may be done in a second or fraction of a second to avoid danger, is a matter of common knowledge. *Goggin v. Schoening*, 199 S.W.2d 87, 94 (Mo.App.1947). Formal proof is unnecessary that present day automobiles respond quickly and accurately to the touch of the driver's hand on the steering wheel. *Kaelin v. Nuelle*, 537 S.W.2d 226, 235 (Mo.App.1976).

█ At 40 miles an hour, a car moves about 59 feet a second and during normal reaction time of three-quarters of a second, travels 44 feet. *Danner v. Weinreich*, 323 S.W.2d 746, 752 (Mo.1959). This would leave Jordan with 306 feet thereafter to stop or swerve, or slacken his speed and swerve to avoid the collision. We believe that to be a sufficient distance for the jury to find as a matter of common knowledge that the collision could have been avoided by proper action by Jordan. The evidence not being contra, it may be assumed that the pavement was dry. *Stone v. Engler*, supra, 349 S.W.2d at 41. If a vehicle going downhill can be stopped within 350 feet, including reaction time, at 50 miles per hour, as this court noticed in *Johnson v. Bush*, supra, 418 S.W.2d at 608, one going slightly downhill at 40 to 45 miles per hour can be stopped within the same distance. We believe that negligence on Jordan's part, which was the proximate cause of plaintiff's injuries, could be properly found from the evidence.

█ Defendant contends that plaintiff was negligent as a matter of law in remaining on the roadway in the path of Jordan's car. Contributory negligence is usually a jury question. *Lemken v. Brooks Truck Lines, Inc.*, supra, 322 S.W.2d at 804. Plaintiff is guilty of contributory negligence as a matter of law only when it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff

was negligent and that his negligence was a proximate cause of his injury. *Binion v. Armentrout*, 333 S.W.2d 87, 91 (Mo.1960). At impact, plaintiff was 6 or 7 feet from the north edge of the pavement. Had he gone in that direction, he might have been struck by his car being knocked into him. Had he gone south, he might have been struck had Jordan swerved to the left after seeing plaintiff's car. Plaintiff testified that he thought Jordan could have seen his car and he "never even dreamed of the man just driving right into me." Plaintiff remained waving his flashlight until the impact to protect his car and "to avoid somebody getting hurt." In *Hammonds v. Haven*, 280 S.W.2d 814, 816 (Mo.1955), the plaintiff was attempting to warn motorists of a dangerous situation on the highway. The court there held that conduct which might otherwise be considered contributory negligence, may not be such where a person is attempting to prevent others from personal injury or death. Also see *Welch v. Hesston Corp.*, 540 S.W.2d 127, 129 (Mo. App.1976).

Bearing that principle in mind, and with our examination of such cases as *Binion v. Armentrout*, supra, and *Willard v. Kansas City Transit, Inc.*, 465 S.W.2d 638 (Mo.1971), we believe that the question of plaintiff's contributory negligence was for the jury to determine. While the circumstances in each case are necessarily different, we believe that plaintiff's conduct and his purpose in trying to warn Jordan, viewing the evidence in his favor, was such that it was a jury determination as to whether he was guilty of contributory negligence. This issue was submitted to the jury and we do not believe we should disturb their finding under the facts and circumstances here before us. Point I is ruled against defendant.

Defendant's remaining two points claim error in the giving of instructions which deviated from Missouri Approved Instructions. Plaintiff admits the deviation but contends that no prejudice occurred. A deviation from M.A.I. is assumed prejudicial and the burden of establishing nonprej-

udice is on the proponent of the instruction. *Murphy v. Land*, 420 S.W.2d 505, 507 (Mo. 1967); *Ogle v. Terminal Railroad Association of St. Louis*, 534 S.W.2d 809, 812 (Mo. App.1976). We must determine the "prejudicial effect" of this error, Rule 70.02(c), V.A.M.R., and should not reverse unless it materially affected the merits. Rule 84.-13(b), V.A.M.R.

Defendant's second point is that the trial court erred in giving plaintiff's submission instruction because it deviated from M.A.I. in including the phrase "on plaintiff's claim for damages". Defendant asserts that this gave "undue emphasis to plaintiff's damage claim". M.A.I. 17.01 provides that this phrase is to be used when defendant has a counterclaim. There had been a counterclaim in this case, but it was not submitted to the jury. An almost identical situation occurred in *State Farm Mutual Automobile Insurance Company v. Jessee*, 523 S.W.2d 832 (Mo.App.1975). The same phrase was inserted in the submission instruction and it was determined that this error could not have misled the jury and that the deviation was thus not prejudicial. The insertion of "on plaintiffs' claim" was held not to be prejudicial in *Hampton v. Trout*, 542 S.W.2d 542 (Mo.App.1976). We do not believe any prejudice would result here. Point II is ruled against defendant.

Defendant's third point is that the trial court erred in giving the burden of proof instruction tendered by plaintiff. Plaintiff tendered and the court gave the form of M.A.I. 3.01 in effect prior to January 1, 1978. The case was tried in August of 1978.

In *Gaehle v. Skyles*, 592 S.W. 2d 205 (Mo.App.1979); *Wagoner v. Hurt*, 554 S.W. 2d 587 (Mo.App.1977), and *Coffer v. Paris*, 550 S.W.2d 915 (Mo.App.1977), the use of replaced M.A.I. instructions were held not to be prejudicial. In each case the instruction placed a greater burden on the party submitting it than did the appropriate instruction. The first sentence in the prior M.A.I. 3.01 is now omitted. Otherwise, the language is the same, but the sentences are not

arranged in the same order. We do not see any advantage to either party by the use of the prior instruction and no reason why plaintiff would prefer the instruction used over the proper instruction. It would appear that this use was inadvertent and not to seek more favorable direction to the jury. Defendant's brief does not state how this error could be material or prejudicial. Nor do we see any basis for prejudice to the defendant. Point III is ruled against defendant.

The judgment is affirmed.

All concur, except FLANIGAN, C. J., recused.