Sam COUNTRYMAN and Mary Countryman, Plaintiffs–Respondents–Appellants,

v.

SEYMOUR R–II SCHOOL DISTRICT and Eual Nichols, Defendants–Appellants,

and

Cameron Mutual Insurance Company, Garnishee–Respondent.

Nos. 17455, 17638.

Missouri Court of Appeals, Southern District, Division One.

Jan. 28, 1992.

Thomas Strong, Douglas W. Greene, Steve Garner, Strong & Associates, P.C., Springfield, for plaintiffs-respondents-appellants.

Rodney E. Loomer, Sherry A. Rozell, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for defendants-appellants.

JoAnne Spears Jackson, Bussell, O'Neal & Hall, Springfield, for garnishee-respondent.

PREWITT, Presiding Judge.

This action is for the wrongful death of plaintiffs' seven-year-old daughter. She was struck by a school bus operated by defendant Eual Nichols. Following trial by jury, a verdict was returned in favor of plaintiffs and against both defendants for $350,000.

Judgment was entered for $100,000 against Seymore R–II School District, see § 537.610.2, RSMo 1986 (since amended, see RSMo Supp.1990), and against Eual Nichols for $350,000 plus pre-judgment interest. Defendants appeal from the judgment. Plaintiffs appeal from summary judgment in favor of garnishee. The appeals were consolidated.

█ On appeal, No. 17455, defendants contend that the trial court erred in finding that plaintiffs made a submissible case of negligence "for failure to keep a careful lookout (Paragraph "First" of Verdict Director) or failure to swerve (Paragraph "First" of Verdict Director)". Defendants state in their first point "that there was no evidence which established that Samantha Countryman was in a position of danger, that Nichols knew or should have known that she was in potential danger, or that he had time thereafter to have taken effective precautionary action."

If a submissible case was made on either lookout or swerve, then the trial court correctly denied defendant's motion for a directed verdict. If we determine a case was also made on failure to keep a careful lookout, it is not necessary to decide if a submissible case was made on the failure to swerve.[1]

█ In reviewing to determine if a submissible case was made, the evidence and reasonable inferences from it are viewed most favorable to plaintiffs. *Wilson v. Missouri–Kansas–Texas Railroad Co.*, 595 S.W.2d 41, 44 (Mo.App.1980). The driver of a motor vehicle in Missouri is required to "exercise the highest degree of care." § 304.010.1, RSMo Supp.1990. This

requirement is applicable to civil actions for damages as a result of the operation of a motor vehicle. See *Kindle v. Keene*, 676 S.W.2d 82, 84–85 (Mo.App.1984); MAI 11.-01, 11.03.

█ Operators of motor vehicles have a duty to keep a vigilant lookout ahead and laterally. *Goodloe v. Pink*, 683 S.W.2d 653, 655 (Mo.App.1984). See also MAI 17.-05, submitting the duty "to keep a careful lookout". To support a case on the theory of failure to keep a lookout, there must be evidence that defendant saw or could have seen plaintiff in time to have avoided the collision. *Jenkins v. Jordan*, 593 S.W.2d 236, 238 (Mo.App.1979). Circumstantial evidence may make a submissible case on failure to keep a lookout. *Id.*

█ The driver of a motor vehicle is under a duty to take effective precautionary action when a person, in the exercise of the highest degree of care, would anticipate danger. *Foster v. Farmers Ins. Co.*, 775 S.W.2d 143, 144 (Mo. banc 1989). The driver's obligation to maintain a lookout extends to a pedestrian standing upon the shoulder or upon the traveled part of the roadway. *Id.* The driver is held to have seen what looking would have revealed and failure to do so is negligence as much as if he had not looked at all. *Id.* at 145.

█ The operator of a vehicle should recognize that a child of tender years on or near a roadway is almost entirely devoid of the appreciation of danger. *Hildreth v. Key*, 341 S.W.2d 601, 607 (Mo.App.1960). Thoughtless and impulsive acts of children are to be expected and should be guarded against. *Id.* See also *Thomas v. Wade*, 361 S.W.2d 671, 674 (Mo. banc 1962).

Upon leaving the grade school in Seymour, Missouri, on December 18, 1987, seven-year-old Samantha Countryman got on a school bus operated by defendant Eual Nichols. On certain days of the week she would ride the bus from school to near her baby sitter's house. The bus left the school traveling south on Commercial

---

1. In addition to lookout and swerve, failure to stop was also submitted to the jury by paragraph "First" of the verdict directing instruction. Like failure to swerve, failure to stop need not be considered here.

Street. It stopped at a stop sign at the corner of Commercial and Market where Samantha got off the bus.

At the intersection, the bus turned right and went west on Market Street, then stopped at the corner of Market and Frances Streets. No children were let off at this stop. The bus then turned right and headed north on Frances Street. Samantha walked along Market Street to the corner of Market and Frances and then turned north and went down the east side of Frances Street toward her babysitter's house. There was no paved sidewalk along Frances Street. It had snowed earlier in the week and road graders had pushed snow and ice to the gravel shoulders bordering the streets. As a result of the road graders removing snow and ice there was snow and ice along Frances Street. There was evidence that it was difficult to distinguish between the road surface and the shoulder.

Samantha was wearing a coat with a hood. She walked north down Frances Street ahead of the bus along the east edge of the roadway with her back to the bus and the hood of her coat around her head. She was skipping or jogging. Nichols testified that after Samantha left the school bus, he last observed her on Market Street. He drove five miles an hour or less along Frances Street. Samantha was struck by an outside rear dual tire of the bus 90 feet from the corner of Frances and Market. Her body was found part on the paved portion of the roadway and part on the gravel shoulder.

The operator of a motor vehicle who sees a child along the roadway has an obligation to watch the child so as to avoid striking her. Numerous occupants of the school bus had seen Samantha moving along Frances Street. Nichols said he did not. It is obvious that if he had seen her he should have continued to watch for her, particularly with snow and ice along the street that day. Had Nichols watched her, the jury could find that at the slow speed the bus was moving, he could have prevented the bus from coming upon and striking her. There was no evidence that Samantha went further toward the center of the road-

way than she had been moving along Frances Street. At five miles an hour Nichols could have easily stopped or turned the bus or could have driven it further away from Samantha.

Failing to see Samantha indicates failure to keep a careful lookout. If he had seen her, Nichols could have slowed further, stopped or swerved to avoid striking her. There was sufficient evidence for the jury to find that Nichols failed to keep a careful lookout and that had he done so, the bus would not have struck Samantha. Point one is denied.

The second point presented by defendants asserts that "the trial court erred in denying appellants' request for a mistrial because respondents' comment on appellants' alleged failure to call other passengers as witnesses was improper in that these witnesses were equally available to both parties." Defendants cite as authority *Kelly v. Jackson*, 798 S.W.2d 699 (Mo. banc 1990); *Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786 (Mo. banc 1983); *Hill v. Boles*, 583 S.W.2d 141 (Mo. banc 1979); and *Routh v. St. John's Mercy Medical Center*, 785 S.W.2d 744 (Mo.App. 1990). The cases cited by defendants do not involve a situation, where, as here, the objection to the argument was sustained and the jury instructed to disregard the comment. Thereafter, counsel for defendants moved for a mistrial. That request was denied.

Assuming, without deciding, that the argument was improper, there was no prejudicial error. Granting a mistrial rests in the sound discretion of the trial court which, absent a manifest abuse of discretion, will not be disturbed on appeal. *Pierce v. Platte–Clay Electric Co-op.*, 769 S.W.2d 769, 778 (Mo. banc 1989); *Wild v. Consolidated Aluminum Corp.* 752 S.W.2d 335, 338 (Mo.App.1988). "A mistrial is a drastic remedy which should only be granted where the incident is so grievous that the prejudicial effect can be removed in no other way." *Wild*, 752 S.W.2d at 338.

The trial court sustained the objection and told the jury to disregard the remark.

Apparently the trial judge determined this was sufficient to remove any prejudice made by the comment. We cannot say that the statement, if improper, was so serious as to require the drastic remedy of a mistrial. The second point is denied.

■ Defendants ask this court in their third point to review a portion of plaintiffs' attorneys' closing argument as "plain error" under Rule 84.13. No objection was made to the comments complained of. Those are as follows:

You know, Mr. Loomer [defendants' attorney] mentioned the Persian Gulf war and as he was making his argument I kind of thought this is a lot like the Persian Gulf war. Because the issue there is whether a mad man can go into a peaceful country, kill innocent people, take their land, and remain there. That's the issue. But Saddam Hussein doesn't want people to focus on that issue. So he bombs Israel and says maybe there will be a holy war. And he lets oil go out into the environment and kill fish and he says maybe people will get distracted from the issue. And the issue in this case is whether that child was out in front of the bus where she could have been seen. That is the issue.

\* \* \* \* \* \*

There is a recent case in the news. The Mayor of Washington, D.C. was on television camera smoking crack cocaine with his mistress. He had a very crafty lawyer. And the mayor was black and the lawyer convinced the jury that the issue was a racial issue and Marion Berry was acquitted.

In this case if the issue is who called Officer Rhodes or whether Mr. Nichols drove off the roadway at an excessive rate of speed when the instruction doesn't say that or whether children have exactly the same memory about minutia, my clients will not have—they will have a Marion Berry jury and we'll have an experienced lawyer.

Defendants contend that these were "inflammatory and derogatory comments regarding appellants' counsel". They state that plaintiffs' attorney "equated appel-

lants' counsel to Saddam Hussein and Marion Berry's attorney." We do not so interpret the remarks. Counsel's statements appear to mean that a jury is sometimes distracted from the main or real issues in a case, such as he says occurred in the case of Marion Berry; also that distractions from the principal issues were attempted by Saddam Hussein in the Persian Gulf War. There were no comments that counsel was committing the type of atrocities attributed to Hussein or that Marion Berry's lawyer did anything improper.

In any event, we do not think that the statements were so serious that plain error can be found. Plain error may be considered in the discretion of this court "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c) We cannot say that manifest injustice or miscarriage of justice has resulted here. Point three is denied.

■ Following issuance of execution and garnishment, the circumstances of which are set forth in more detail in plaintiffs' appeal, garnishee Cameron Mutual Insurance Company paid its insurance coverage into court. Payment was made before any order was made by the court for garnishee to do so. Plaintiffs contend that the payment was voluntary and in disregard to the garnishment issued at plaintiffs' request. They filed a motion seeking to dismiss defendants' appeal "on the basis of voluntary payment of the Judgment". Although there may be other reasons that the appeal is not moot, it is sufficient to note that when payment is made following an execution or garnishment, courts have generally held that the payment was involuntary, which did not bar an appeal. *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983). In that situation the inference is strong that the payment was made as a result of legal coercion. *Id.* The motion is denied. The judgment appealed from in Case No. 17455 is affirmed.

We turn to plaintiffs' appeal, this court's No. 17638. After judgment was entered in favor of plaintiffs and against defendant

Nichols for $350,000 and against defendant Seymour R–II School District for $100,000, plaintiffs caused an execution to be issued and garnishment served upon garnishee Cameron Mutual Insurance Company. That company insured the school district as the named insured and Nichols as a permissive user for liability for damages as a result of the operation of the school bus. The policy had a limit of $250,000 for the death of one person. Plaintiffs' execution and request for garnishment was to "Garnish: Policy proceeds payable on behalf of Eual Nichols." Following the garnishment, but before garnishee answered the interrogatories served with the garnishment, garnishee paid to the circuit clerk its policy limits.

Garnishee paid to the circuit clerk by sight draft $101,009.70 seeking that it be applied toward the obligation of the school district, and $152,773.80 by sight draft as "partial satisfaction of the judgment" for Nichols. This totals $253,783.50. Plaintiff filed a "receipt of partial satisfaction of judgment rendered against Eual Nichols" for the total amount. According to the drafts, the amount in excess of the coverage was "post judgment interest". For simplicity, this court will refer only to the policy limits, disregarding any post judgment interest, as it would appear to remain the same however the insurance proceeds are applied.

At issue on the merits of this appeal is whether garnishee could pay $100,000 of that limit to be applied on the portion of the judgment against the school district or whether it was required, because of the garnishment, to pay its limits only toward Nichols' liability. After the payment into court and before garnishee filed its answers and objections to plaintiffs' interrogatories, plaintiffs filed a "Motion for Apportionment of Proceeds Recently Paid into Court" contending that all of the money deposited should be toward the liability of Nichols under the judgment.

After the interrogatory answers and objections were filed by garnishee, both parties moved for summary judgment. The trial court sustained the motion for summary judgment of garnishee and entered summary judgment in its favor. Plaintiffs contend that the trial court erred in granting garnishee's motion for summary judgment and denying their motion for summary judgment.

Plaintiffs contend that the garnishee should be liable for an additional $100,000 because it paid that amount toward the liability of the school district in violation of the garnishment. In the alternative, plaintiffs state "that there were two insureds jointly responsible for a $115,965.00 [actually $115,965.50] verdict in excess of the policy coverage taking into account prejudgment interest." Plaintiffs say that to treat defendants equally each should be responsible for half of the excess judgment. Thus, the insurance proceeds should be allocated $42,017.50 to the school district and $207,982.50 to Nichols, leaving each with $57,982.50 unsatisfied. To reach this result plaintiffs say they are entitled to an additional $57,982.50 from garnishee "for its willful violation of plaintiffs' garnishment."

As a second alternative, plaintiffs claim that as Nichols "was responsible for 72.-67% of the judgment, as an insured he should be entitled to 72.67% of the $250,-000.00 of insurance available or $181,-675.00." Under this approach plaintiffs contend that Nichols could, and thus they should receive from garnishee an additional $31,675.00.

◼ The first issue we address is whether plaintiffs properly preserved their claim. Garnishee contends that by not filing exceptions to garnishee's answers to interrogatories, those answers "must be taken as true and sufficient, and plaintiffs abandoned their garnishment".

Rule 90.13 generally provides the procedure to be followed in this type of garnishment.[2] That rule requires there be written

---

**2.** The parties agree that the procedure instituted by plaintiffs is governed by that rule and not § 379.200, RSMo 1986, providing for a separate procedure to have insurance proceeds applied toward a judgment.

interrogatories and "exceptions to the answers asserting any ground upon which recovery is sought against the garnishee." Rule 90.13(c). Thereafter, the garnishee may file a response to those exceptions. Rule 90.13(d). "The issues tried shall be those raised by the exceptions and response." Rule 90.13(e).

■ Garnishment in aid of execution is a creature of statute in derogation of the common law and thus strict compliance with all its requirements formerly by statute and now by rule is essential. *Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 953 (Mo.App.1984). Failure of plaintiffs to properly file exceptions is "an abandonment or discontinuance of the garnishment proceeding." *State ex rel. Bagnell Inv. Co. v. Luten*, 647 S.W.2d 539, 541 (Mo. banc 1983); *Propes v. Rhodes*, 706 S.W.2d 914, 915 (Mo.App. 1986).

Plaintiffs counter garnishee's contentions by stating that they did not abandon their garnishment action as it was not necessary to file an exception to garnishee's legal conclusions and that the answers to interrogatories show that upon these facts they were entitled to summary judgment. Regarding the necessity of filing exceptions they rely upon *Frohoff v. Casualty Reciprocal Exchange*, 113 S.W.2d 1026 (Mo.App.1938).

In that case it is stated that plaintiff does not have to deny answers of the garnishee if the answers to interrogatories supports a judgment for plaintiffs. Such answers "could support the final judgment against the garnishee only in the event that it contained an admission of the garnishee's liability to the judgment debtor." 113 S.W.2d at 1030. The application of *Frohoff* then depends on whether garnishee's answers admitted facts which establish as a matter of law that plaintiff is entitled to all or part of the relief requested.

Relevant here are the following interrogatories and their answers by garnishee:

3. Did Cameron Mutual Insurance Company Policy Number 24 A 79453 insure the Seymour R–II School District for damages resulting from the death of Samantha Countryman on December 18, 1987?

ANSWER: Yes, to the extent allowed by law but not more than the limits stated in the insurance contract.

4. Was Eual Nichols insured as a permissive user of Seymour R–II School District under the terms of Cameron Mutual Insurance Company Policy Number 24 A 79453 on December 18, 1987?

ANSWER: Yes.

5. On December 18, 1987, was the limit of liability for the death of any one person as a result of any one accident on Cameron Mutual Insurance Company Policy Number 24 A 79453 the amount of $250,000.00? If not, what was the limit?

ANSWER: Yes.

6. Have any payments for death or bodily injury been made pursuant to the terms of Cameron Mutual Insurance Company Policy Number 24 A 79453 with regard to the death of Samantha Countryman on December 18, 1987? If so, what payments have been made, to whom were they made and when were they made?

ANSWER: Yes. A payment under the medical payments coverage was tendered on or about August 22, 1990, in the amount of Two Thousand Forty–Nine Dollars and Seventy–Five Cents ($2,049.75); additionally, payments were made to the Circuit Clerk of Webster County, Missouri, totally Two Hundred Fifty-five Thousand Four Hundred Twenty-three and 42/100 ($255,423.42), comprised of the Two Hundred Fifty Thousand ($250,000) liability contractual limit, post judgment interest, and court costs, as reflected in Exhibits A, B, and C attached hereto.

7. Does Cameron Mutual Insurance Company Policy Number 24 A 79453 or any endorsement or amendment thereto or any other contract between Cameron Mutual Insurance Company and the Defendants herein or any third party provide for allocation between the insured and any permissive user of the amounts payable for damages under Cameron Mutual Insurance Company Policy Number

24 A 79453? If so, what policy provision, endorsement or amendment or what contract provides for such allocation?

ANSWER: No.

Garnishee's liability to pay under the garnishment is limited to what defendant Nichols could require it to pay. "The liability of a garnishee is measured by its liability to the judgment debtor". *Max Stovall Const. Co. v. Villager Homes, Inc.,* 684 S.W.2d 562, 564 (Mo.App.1984). Garnishee may be compelled to pay the plaintiff creditor "only to the extent that the garnishee is indebted to the judgment debtor". *Id.*

■ A claimant who successfully receives a judgment for negligence in an automobile collision against an insured defendant stands in the shoes of the insured person and has rights no greater or no less than the insured's rights would have been if the latter had paid the judgment and sued his insurance company to recover the amount paid. *Frickleton v. Fulton,* 626 S.W.2d 402, 406 (Mo.App.1981).

■ The question then turns on whether Nichols could require that all or a specific share of the insurance proceeds, more than garnishee purported to apply, be applied toward his liability on the judgment or whether garnishee can, as it purported to do, apply the policy proceeds first toward discharging the liability of the school district, its named insured. The insurance policy is not before us but by its answers to interrogatories garnishee stated that there was nothing in the insurance policy or other contract which would "provide for allocation between the insured and any permissive user of the amounts payable". As there are no facts in dispute on this issue and the question is one of law based upon the judgment and the answers to interrogatories of garnishee, under *Frohoff,* if these facts support relief for the plaintiff, exceptions were not required.

*Smoral v. Hanover Insurance Co.,* 37 A.D.2d 23, 322 N.Y.S.2d 12, 14 (1971), held that the named insured should not be favored over a permissive insured, stating:

It is absolutely no answer for the company to say that it paid the full amount of its policy if in so doing it fully protected one of its insureds and left the other completely exposed. While it is easy to see why Hanover acted as it did—the insured it protected was a policyholder, the one whose rights it ignored was an insured it was by law required to defend—there is no legal justification for its preferring one over the other.

However, the result of so doing was not determined in *Smoral.* The court did not address how policy limits should be paid where they are insufficient to discharge the obligation of two insureds under the same policy. Neither side cites any other case bearing on the duty of an insurer to multiple insureds.

Plaintiffs cite *Christlieb v. Luten,* 633 S.W.2d 139 (Mo.App.1982), contending it "establishes the proper procedure for an insurance company to take when competing claimants are making claims against an insurance policy inadequate to pay all rightful claimants". The facts in *Christlieb* are different than here. There, an automobile collision resulted in personal injuries to one person and the death of two others. The trial court consolidated for trial the three actions presenting those claims. Damages substantially exceeded the $20,000 limit of insurance proceeds.

*Christlieb* concluded that the trial judge was correct in making a pro rata allocation of the $20,000 insurance proceeds in accordance with the amount of damage suffered by each plaintiff. *Christlieb* is in accordance with the general rule in such situations. See Annotation, *Basis and manner of distribution among multiple claimants of proceeds of liability insurance policy inadequate to pay all claims in full,* 70 A.L.R.2d 416, 417 (1960), noting that this is the proper result where "several claims arising from an insured event have been joined in one suit". Here, of course, there is one claim for damages, but two insureds, who may be competing for the protection of the policy.

Certain equities appear for the garnishee being allowed to first discharge the school district's obligation, it is the one paying the premiums, any amount paid for it applies toward Nichols' obligation, and it might be entitled to indemnity against Nichols.[3]

Nevertheless, what the record reflects of the insurance contract indicates that the garnishee has an equal obligation to the defendants. This court believes the proceeds should be proportionately divided so that each insured gets the same percentage of protection against the liability assessed. This is similar to the approach taken in such cases as *Christlieb*. The result reached in the following paragraph is not that advocated by any party but appears proper to this court.

The judgment totaled $365,965.50. Nichols was liable for all of it but would receive a credit for any amounts paid toward the $100,000 liability of the school district. The school district is liable for 27.32498% of the total judgment. That percentage times the coverage is $68,312.45. The balance of the coverage, $181,687.55, should be payable under the garnishment for the benefit of defendant Nichols. The school district will have 68.31245% of its liability paid. Nichols will have $250,000 of his liability paid which is also 68.31245% of his liability.

By paying its policy limits the garnishee discharged its liability. Although it may have incorrectly sought to apply those limits, the final decision as to allocation was for the courts and the garnishee should not be penalized by having to pay an additional amount, particularly where there was no clear guidance in the law.

The judgment in cause No. 17455 is affirmed. The trial court's order in cause No. 17638 granting summary judgment to garnishee is reversed and that matter remanded for the trial court to enter an order applying the amount paid into court by garnishee in accordance with this opinion.

CROW and PARRISH, JJ., concur.

---

**3.** Had it elected to do so, it appears that the school district might have been entitled to indemnity from Nichols. Indemnity is generally allowed in favor of the employer when the employer is vicariously liable when a servant is negligent, causing both himself and his employer to be liable. *McDonnell Aircraft Corp. v. Hartman–Hanks–Walsh Painting Co.,* 323 S.W.2d 788, 793–794 (Mo.1959).