**Theophia ROBINSON, Administratrix of the Estate of Capitolia Proctor, Deceased, Plaintiff-Appellant,**

**v.**

**Marshall RICHARDSON, Defendant-Respondent.**

**No. 34220.**

Missouri Court of Appeals, St. Louis District, Division One.

Aug. 1, 1972.

Eugene B. Weisman, Walter S. Berkman, Clayton, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Paul S. Brown, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Theophia Robinson, the daughter and sole heir of Capitolia Proctor, was appointed administratrix of her mother's estate and brought this action to recover damages of $25,000 for the wrongful death of her mother, claimed to have resulted from being struck by defendant's automobile. Trial to a jury culminated in a verdict and judgment for defendant, from which plaintiff appeals.

The only point presented here by plaintiff is that the trial court erred in giving, at the request of the defendant, Instruction No. 5, which withdrew from consideration by the jury plaintiff's evidence regarding the funeral expenses. Defendant, in addition to controverting that contention, maintains that plaintiff failed to make a submissible case on her disjunctively submitted assignments of humanitarian negligence in failing to warn or to swerve. If so, then of course the defendant's motion for a directed verdict at the close of all the evidence should have been sustained, and the error, if any, in giving Instruction No. 5 was immaterial and harmless. Brooks v. Stewart, Mo., 335 S.W.2d 104; Bello v. Stuever, Mo., 44 S.W.2d 619; Shepard v. Ford Motor Co., Mo.App., 457 S.W.2d 255. Accordingly, we direct our attention first to that contention of defendant's.

Plaintiff did not produce any eyewitness to the accident and her only evidence in her case in chief consisted of excerpts read from defendant's deposition. In defendant's case there was testimony from a police officer, the defendant, and his wife. The evidence favorable to plaintiff is that on the night of March 15, 1969, Mrs. Proctor, 68 years of age, attempted to cross Jefferson Avenue at the cross-walk adjacent to the intersection of that thoroughfare with Howard Street, in St. Louis. Jefferson had six lanes, three for southbound traffic and three for northbound. Defendant testified that he first saw Mrs. Proctor as she was stepping off of the west curb of Jefferson and that she walked eastwardly in a normal manner. There was evidence that Mrs. Proctor did not see the car, and that it struck her when she was in the middle of the three southbound lanes. After the contact Mrs. Proctor was observed to be lying in the street about three or four feet in front of defendant's car. The street was level and dry, the area was well lighted, there were no cars parked along the curb, and there was no other traffic in front of defendant or in the southbound lanes to his left or right.

Defendant conceded that he neither blew his horn nor swerved. He contended that he was only about two car lengths from Mrs. Proctor when he first saw her, that he immediately applied his brakes, and that he started to slow down. Contrary to his statement made to the police officer that his car had struck Mrs. Proctor, in his deposition and during the trial he stated that his car had stopped and that Mrs. Proctor walked against his car; but he also testified that Mrs. Proctor and the car had stopped at the same time. He testified that the tires on his 1967 Plymouth automobile were good, and that his car was in good operating condition. Defendant's wife, who was seated to his right, said that she did not see Mrs. Proctor before the accident, and that the first she knew that something was amiss was when her husband applied the brakes and she heard a thud.

 Defendant was not asked, and did not state, the length of his car or its distance in feet from Mrs. Proctor when he first saw her. However, taking into account his speed of 25 miles an hour, his reaction time and his slow speed at the time of impact it is apparent that when he first saw Mrs. Proctor step off of the curb, oblivious to its approach, it is apparent from his own testimony that he must have been farther away from her than the 35 or 40 feet indicated by his testimony. Nor was there evidence, from any source, as to the width of the curb lane which Mrs. Proctor traversed, at a normal gait. However, we take judicial notice of the speed at which a person normally walks. Perry v. Dever, Mo., 303 S.W.2d 1; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628. And taking into account the width of modern cars, Fisher v. Gunn, Mo., 270 S.W.2d 869; Lee v. Holland, Mo.App., 258 S.W.2d 30, it is obvious that a lane for motor vehicle traffic must be at least 7 or 8 feet wide. Taking into account the time which must have elapsed while Mrs. Proctor, walking at the above rates of speed, walked across the curb lane, the distance covered by defend-

ant's car at 25 miles per hour during that period of time, his reaction time, as well as the known fact that motor vehicles respond quickly and accurately to a driver's touch on the steering wheel, Richardson v. Wendel, Mo., 401 S.W.2d 455, it may be mathematically demonstrated that defendant had ample time and distance, after he first saw Mrs. Proctor step off of the curb, to have swerved his car to his left and thereby have avoided striking the deceased. Losh v. Benton, Mo., 382 S.W.2d 617.

We turn then to the point raised by plaintiff in her appeal. In her case in chief plaintiff testified that she was 49 years of age, and that she was separated from her husband and had lived with her mother. She stated that her mother, who was in good health, received $100 or $150 per month from Social Security, and a pension from the employer of her mother's deceased husband, the amount of which she did not know. Plaintiff worked and turned over her earnings to her mother who paid all the bills, but she said that when she was out of work, as occurred from time to time, her mother was her sole support. She testified that by reason of her mother's death she had expended the following amounts: cemetery charges, $95.00; funeral bill, $1074.25; monument, $261.62; and one-half of her mother's hospital bill, $279.00, or a total of $1709.87. Receipted bills for the foregoing expenditures were introduced as exhibits. That for the funeral was receipted on May 6, 1969.

Prior to the time defendant called his last witness the record shows that the following occurred in chambers:

"THE COURT: Let the record show that on asking counsel into Chambers for the submission on instructions and some discussions were had, Mr. Brown has raised a point in that connection.

"MR. BROWN: That in this case, the plaintiff is the Administratrix and also suing for the heirs, of which she is the sole one. The issue came as to her right

to collect for the funeral expenses of a little over $1,074.00. Defense counsel has ascertained that she did not pay the funeral expenses, they were paid by a policy of insurance on a Mr. Adams, under his automobile policy, who is her son, and who was in the same household as the deceased, and, therefore, counsel for the defense has indicated that he would put that evidence on and that in light of that evidence being a fact and, apparently, it is the fact, a withdrawal instruction was offered for the Court's consideration, withdrawing from the jury on the evidence of payment by the plaintiff of the funeral expenses.

"THE COURT: As I understand it, Mr. Berkman, you don't deny that the expenses he mentioned were paid under this (?) other policy?

"MR. BERKMAN: No, sir, I do not. I admit it.

"THE COURT: Under those circumstances and the case of Caen versus Feld [Mo.], 370 [371] S.W.2d 209, has been called to the Court's attention, and in view of that case's effort to distinguish the rule and the discussion of prior cases as to the rule on recovery of funeral expenses, the Court feels under the circumstances of this case just set out by Mr. Brown, such a withdrawal instruction will be given and it is, further, the Court's understanding that by doing that is satisfactory as far as Mr. Brown is concerned on the point?

"MR. BROWN: Yes, sir.

"MR. BERKMAN: And I object to the ruling of the Court.

"THE COURT: All right."

As heretofore stated, the court gave Instruction No. 5, the withdrawal instruction as to the funeral expenses. The only point urged in plaintiff's motion for a new trial was that the court had erred in giving it. In support of that motion plaintiff called to the stand Eugene B. Weisman, an attorney at law, who testified that while Mrs. Proctor was in the hospital she employed him to represent her, and that after her death he represented the plaintiff; that he had plaintiff appointed administratrix of her mother's estate, and that the only asset in the estate was the cause of action for wrongful death; that he advised plaintiff that if the funeral bill was not paid Mrs. Proctor would be buried at public expense; that plaintiff, who had given the order for the funeral, agreed to pay the expenses; that subsequently he learned that Mrs. Proctor's grandson, who resided in the same building as she did but in a separate apartment, had an automobile policy which provided medical payments up to $2,000.00; that he made a claim against the insurer for the funeral bill on behalf of plaintiff; and that eventually about October 27, 1969, the insurer paid "two thirds of the policy, plus expenses" of $28.23. He charged plaintiff a fee of one-third, so that the net amount she received did not fully reimburse her for the funeral expenses. The court overruled plaintiff's motion for a new trial and this appeal followed.

We have quoted at length the colloquy which occurred in chambers at the time the court decided to give the withdrawal instruction. In giving the reasons for its ruling the court referred to both plaintiff's reimbursement of the funeral expense made by Adams' insurer and to the Supreme Court's effort in Caen v. Feld, Mo., 371 S.W.2d 209, " * * * to distinguish the rule and the discussion of prior cases as to the rule on recovery of funeral expenses." An examination of Caen readily indicates what the trial court had in mind by that reference. As pointed out by the Supreme Court in Caen, while for almost a hundred years it was held that in a suit by a parent for the wrongful death of a minor child funeral expenses were proper elements of

damage, Owen v. Brockschmidt, 54 Mo. 285; Hickman v. Missouri Pacific Ry. Co., 22 Mo.App. 344; Hildreth v. Key, Mo. App., 341 S.W.2d 601, it had also been the rule that in a suit by an administrator on behalf of the beneficiaries named in Paragraph 3 of § 537.080, V.A.M.S. funeral expenses paid by such adult beneficiaries were not recoverable, Miller v. Williams, Mo., 76 S.W.2d 355; McCullough v. W. H. Powell Lumber Co., 205 Mo.App. 15, 216 S.W. 803. In Caen the action was brought by the administratrix of the deceased's estate to recover damages to which his adult daughters claimed they were entitled. There was evidence that the only asset in the estate was the claim upon which the suit was based, but as the Supreme Court pointed out, such a claim in fact is not an asset of the estate because any sum recovered is not subject to the claims of creditors and inures to the exclusive benefit of the persons designated by the wrongful death statute. During the trial plaintiff offered evidence that the funeral expenses had been paid by the adult daughters of the deceased but on defendant's objection such evidence was excluded. The jury returned a verdict for plaintiff for $500 and plaintiff appealed, contending that the verdict was grossly inadequate and that the court had erred in refusing to admit evidence of funeral expenses. After reviewing the law regarding funeral expense as an element of damage in wrongful death cases the court pointed out that inasmuch as there were no assets in the deceased's estate his adult daughters were confronted with the choice of either incurring the legal liability for the burial expenses of their father or under the applicable statutes, of permitting him to be buried as a pauper at public expense or having his body turned over to an educational institution. It concluded that, "* * * Under the specific facts of this case the evidence of funeral expenses in a reasonable amount was erroneously excluded." Caen v. Feld, supra.

■ During the course of the trial in the instant case plaintiff apparently construed Caen to hold that in *any* case brought by an administrator on behalf of adult beneficiaries evidence of the funeral expenses paid by them in a wrongful death case was admissible and proper elements of damage. Not so. The court in Caen was careful to limit the applicability of that case to a situation where there are no assets in the deceased's estate, and the legal liability for the funeral expense is incurred to avoid or prevent the burial of the deceased at public expense as a pauper or to prevent the delivery of the body to a medical institution. Note what the court said (371 S.W.2d 213):

"We conclude that when one or more of the beneficiaries named in paragraph (4) of Section 537.080 incurs a legal liability for funeral expenses to avoid or prevent the burial of the deceased at public expense as a pauper, or to prevent the consignment of his body to a medical institution, those expenses in a reasonable amount constitute an element of damages in a suit for wrongful death on the basis that they constitute a pecuniary loss within the meaning of the wrongful death statute. * * * "

Obviously, if the deceased is a wealthy man and the assets of his estate are ample to defray the cost of his burial the exception announced in Caen is not applicable if a beneficiary voluntarily pays such expenses.

■■ Whatever may have been the precise grounds upon which the trial court gave Instruction No. 5 we have concluded that under the state of the record as it existed at the time the court made its ruling the court did not err. This for the reason that at that time no evidence had been introduced to show the financial condition of the estate and hence plaintiff had failed to establish the basis upon which the exception announced in Caen was predicated. For aught that then appeared there

**32**

may have been an abundance of assets in the estate to defray the cost of the burial. And while it is true that evidence to the contrary was introduced in support of plaintiff's motion for a new trial, plaintiff's complaint is that the court erred in giving the withdrawal instruction and the determination of whether or not the court so erred must be made in the light of the record as it existed at the time the instruction was given. It would be manifestly unfair to convict the trial court of error on the basis of evidence which was not before him at the time he made his ruling.

■ Furthermore, the claimed error in the giving of Instruction No. 5 related only to the plaintiff's damages for the burial expenses. Plaintiff, by both testimony and documentation, introduced other evidence regarding the damages she sustained by reason of her mother's death. Nevertheless, the jury returned a verdict for defendant on the issue of liability, as it was entitled to do under defendant's evidence. Accordingly, while we are of the opinion that the court did not err in giving Instruction No. 5, even if we reached a contrary view plaintiff would not be entitled to a reversal of the judgment since such error, if true, was harmless and not prejudicial in view of the jury's determination of the issue of liability. Mead v. Grass, Mo., 461 S.W.2d 708; Moll v. Springdale Park, Inc., Mo., 395 S.W.2d 126; Nash v. Plaza Elec., Inc., Mo., 363 S.W.2d 637.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

BRADY, C. J., and WEIER and CLEMENS, JJ., concur.