William LEWIS, Jr., Respondent,

v.

STATE SECURITY INSURANCE
COMPANY, Appellant.

No. 50558.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 12, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court
Denied Sept. 24, 1986.

Application to Transfer Denied
Nov. 18, 1986.

James M. Daly, Stephen G. Bell, St. Louis, for appellant.

Ray E. White, III, St. Louis, for respondent.

SNYDER, Chief Judge.

State Security Insurance Company appeals from a judgment awarding respondent William Lewis, Jr. money damages for injuries he sustained as a result of being struck by a hit-and-run automobile as he walked across St. Charles Rock Road. Respondent sued State Security under the uninsured motorist provision of a policy it issued to respondent's brother with whom respondent lived.

Appellant alleges the trial court erred in submitting the case to the jury on a "failure to keep a proper lookout" instruction because respondent failed to make a submissible case on this issue. This court agrees. The judgment is reversed.

On June 19, 1982, at about 11:30 p.m. respondent was struck by a hit-and-run automobile as he walked across the eastbound lanes of St. Charles Rock Road at its intersection with Coles Avenue. The intersection of St. Charles Rock Road and Coles Avenue is a "T" intersection with Coles intersecting from the south and not con-

tinuing past St. Charles Rock Road to the north. A raised median separates the westbound and eastbound lanes of St. Charles Rock Road.

One could see eastbound traffic on St. Charles Rock Road for about three blocks west of the place of the accident. The scene of the accident is level and straight, with no hills or curves. The intersection of Coles and St. Charles Rock Road was well lighted by a street light and lights from adjacent business establishments. There were no parked cars along the eastbound curb lane at the time of the accident. Eastbound traffic on St. Charles Rock Road was visible for three long blocks west of the place of the accident and there were no other eastbound vehicles, other than the hit and run automobile, in those three blocks. There were cars stopped at a traffic signal located three blocks west of Coles Avenue.

Respondent was crossing St. Charles Rock Road from north to south at the Coles intersection. He was going from the El Rancho Lounge on the north side of St. Charles Rock Road to the Rainbow Lounge on the south side.

On the night of the accident he drank 3 or 4 beers at the El Rancho Lounge and had drunk an additional 3 or 4 beers prior to that at an anniversary party. Medical records showed respondent's alcohol level to be .414 on his admission to the hospital following the accident.

Respondent crossed the two westbound lanes of St. Charles Rock Road without difficulty, walking normally without staggering, passed through the median after looking for traffic and saw only the cars three blocks to the west at the stop light. He was struck in the middle eastbound lane. There was no sound of brakes or a horn before the collision, but there was the sound of brakes immediately after the collision. The hit-and-run driver did not stop, but instead accelerated and continued traveling east on St. Charles Rock Road.

It should be pointed out that the only other witness, Alice Bagwell, testified that respondent was walking south to north and that he was struck in the left hand east-bound lane. Bagwell did not see the actual impact. She heard "a loud thump", turned around and saw respondent in the air above the car. She did not see the hit-and-run vehicle before the accident, had no idea where it came from, and did not see the vehicle's license plate number, being concerned, as she said, with the respondent's condition.

Respondent filed suit relying on the uninsured motorist provisions of his brother's insurance policy with appellant. The case was submitted to the jury on the theory that the operator of the hit-and-run vehicle failed to keep a careful lookout. The jury found for respondent and against appellant and awarded respondent damages of $75,000.00. The trial court ordered this sum reduced to $25,000.00, the limits of the applicable insurance policy.

In its sole point relied on, appellant charges the trial court erred in submitting to the jury the instruction on failure to keep a careful lookout because respondent failed to make a submissible case. Appellant's point is well taken.

In considering whether a submissible case was made to support the failure to keep a careful lookout instruction, this court must construe the evidence in a light most favorable to respondent, the party offering the instruction. *Commerford v. Kreitler,* 462 S.W.2d 726, 728[1] (Mo.1971); *Finninger v. Johnson,* 692 S.W.2d 390, 394[9] (Mo.App.1985).

■ Submission of a jury instruction on failure to keep a careful lookout must be supported by substantial evidence "from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle or person in time thereafter to have taken effective precautionary action." (citations omitted) *Heberer v. Duncan,* 449 S.W.2d 561, 563[3] (Mo. banc 1970); *Zalle v. Underwood,* 372 S.W.2d 98, 102[1–3] (Mo.1963).

The party offering the instruction has the burden of showing a causal connection between the alleged failure to keep a proper lookout and the injury sustained. *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo.App.1978). If the evidence presented "leaves the causal connection in the nebulous twilight of speculation, conjecture and surmise," the burden is not met and the jury should not be instructed on the failure to keep a careful lookout. *Id.* Even viewing all the evidence in favor of respondent, as this court must, respondent failed to meet this burden.

Respondent remembers crossing the westbound lanes of St. Charles Rock Road. He checked for vehicles before attempting to cross the eastbound lanes of traffic, and after seeing none, proceeded to cross the remainder of the street. (Although respondent testified that he crossed the road from north to south, in his brief he accepts the witness' testimony that he, respondent, crossed from south to north.) He did not see the vehicle that struck him and he did not know where it came from.

The only witness other than respondent testified that she did not see the actual impact, did not know where the vehicle came from and did not refute the possibility that the hit-and-run vehicle could have pulled out from a parking lot along St. Charles Rock Road.

No evidence was presented indicating from where the hit-and-run vehicle came. Without knowing where the vehicle was positioned on the road, it cannot be determined whether the driver of the vehicle failed to keep a proper lookout. This court cannot "imagine the existence of evidence, when none in fact exists, or supply missing evidence, to flesh out an otherwise insubmissible case, nor can it spring inferences from nowhere upon which to predicate submissibility." *Wallander v. Hicks*, 526 S.W.2d 848, 850[1, 2] (Mo.App.1975).

In *Harris v. Lane*, 379 S.W.2d 635 (Mo.App.1964) a child was struck by an automobile. The child's parents sued the driver of the automobile for negligence. The case was submitted to the jury solely on a failure to keep a careful lookout instruction. On review for sufficiency of the evidence, plaintiff argued that he was entitled to inferences that would tend to prove defendant's failure to keep a careful lookout. The court agreed provided that the inferences could reasonably be drawn from the facts in evidence. *Id.* at 637.

The Harris court held that plaintiff failed to make a submissible case stating "the weakness in plaintiff's case is that there is no evidence tending to prove that plaintiff was in plain view as defendant approached the intersection, or that defendant could have seen him any appreciable length of time sooner than he did." *Id.* at 639. The same weakness exists in the present action. There was no evidence of where the hit-and-run vehicle came from, its condition, the ability of the driver to see respondent before the accident, the speed of the vehicle, or the distance of the vehicle from respondent at the time the driver was first able to see him.

Respondent has attempted to supply the missing evidence through the use of judicial notice. Respondent asks this court to take judicial notice that: 1) the average walking speed of a person is 2.9 to 4.4 feet per second; 2) human reaction time is ¾ of 1 second unless evidence shows a longer time; 3) the mobility of a car and the quickness with which it may be swerved, and what may be done in a second or fraction of a second to avoid danger, is a matter of common knowledge; and 4) a lane for motor vehicle traffic is at least 7 or 8 feet wide.

Respondent then argues that one can use the above "facts" to calculate that the hit-and-run driver should have seen the respondent in time to avoid the accident.

The flaw in respondent's theory is that there is no evidence tending to show where the hit-and-run vehicle came from, or its speed at any time. In *Robinson v. Richardson*, 484 S.W.2d 27 (Mo.App.1972), a humanitarian case cited by respondent, the court knew the distance from which defendant traveled and the speed he traveled

**542**

and could, therefore, calculate the reaction time. *Id.* at 29. Likewise in *Jenkins v. Jordon*, 593 S.W.2d 236 (Mo.App.1979), also relied on by respondent, the trial court knew where defendant came from and could properly use judicial notice of reaction time to determine if defendant had time to stop. *Id.* at 237.

In the present case, however, the trial court did not have evidence of where the hit-and-run vehicle came from nor its speed. The submission of the failure to keep a careful lookout instruction was error as it allowed the jury to render a verdict based on impermissible inferences rather than factual evidence. The jury could have found for the plaintiff only through speculation and conjecture.

The judgment is reversed.

CARL R. GAERTNER, P.J., and SMITH, J., concur.