Tim HANSEN, Appellee,

v.

SEABEE CORPORATION, Appellant.

No. 02–2071.

Supreme Court of Iowa.

Oct. 6, 2004.

Rehearing Denied Nov. 2, 2004.

Margaret C. Callahan, Mark McCormick, James R. Swanger, and Michael R. Reck of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

Thomas M. Werner, Des Moines, for appellee.

CADY, Justice.

This appeal requires us to delve once more into the murky landscape that is the law of disability discrimination. A worker claimed he was disabled, and protected under the Americans with Disabilities Act

(ADA), because his sore back limited his ability to lift and to perform some jobs he had done earlier in his life. The district court awarded Hansen damages on his claim under the ADA. For the reasons that follow, we reverse the district court judgment.

## I. Background Facts and Proceedings

Tim Hansen left high school in 1974, obtained a general equivalency degree, and enlisted in the United States Army. He served in the army for two years and worked as a mechanic. After his honorable discharge, he worked for the next twenty years in the construction industry, building Astro buildings, painting water towers, and pouring concrete for new home construction.

Seabee Corporation hired Hansen on May 4, 1998. He was forty years old at the time. Seabee manufactures hydraulic cylinders used in heavy-duty equipment, and Hansen was trained to operate a straightening machine in the grinding department of its plant located in Hampton. He was a good employee who received favorable job evaluations, had no history of disciplinary problems, and received regular pay increases.

On April 12, 2000, Hansen noticed he had a sore back and some tingling and numbness in his leg. He surmised that his ailments were caused by bending over his straightening machine. The following day, he was examined by a doctor, who diagnosed him with a "right sacroiliac lesion with flexion and inflammation." Hansen promptly informed Seabee of his injury.

After Hansen reported his injury, he felt "his supervisors' attitudes towards him deteriorated." On June 6, 2000, Hansen's doctor recommended that Seabee elevate Hansen's worktable six inches. Yet, instead of promptly raising the table, Seabee transferred Hansen to a light-duty position in the plant washing rods.

On June 27, 2000, Seabee informed Hansen he was being laid off, explaining that production was down. Hansen observed that no other employees were laid off that day and that Seabee even retained a less senior straightening machine operator. The next day, Seabee called Hansen and offered him a job in the honing department. Seabee told him he would keep the seniority he had accumulated as a straightener for purposes of benefits, as well as the wage he had previously earned. However, he was apparently required to start as the least senior employee in the honing department. Hansen accepted the offer and returned to work on June 29, 2000.

Hansen eventually filed a petition against Seabee in district court on February 2, 2001. He alleged disability discrimination in violation of the Iowa Civil Rights Act (ICRA), Iowa Code chapter 216 (2001), and retaliatory discharge. The lay-off on June 27 was the adverse employment action upon which Hansen's disability discrimination claim was based. On April 17, he amended his petition to add a claim of disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (2000).

Hansen continued working at Seabee until October 5, 2001, when he was again laid off as part of a mass reduction in personnel. Hansen did not believe the lay-off was discriminatory, but felt he would have acquired sufficient seniority to avoid the lay-off if he had not been laid off on June 27.

The district court, in its pretrial conference order, directed the parties to exchange witness and exhibit lists by September 15, 2002. On October 15, 2002, the trial date, Seabee still had not provided Hansen with its witness and exhibit lists.

Hansen filed a "Motion to Exclude All Witnesses and Exhibits of Defendant." The court granted the motion, and a jury trial commenced. Hansen was the only witness who testified. Seabee's evidence was limited to reading Hansen's answers to various requests for admissions into the record. Seabee then moved for a directed verdict on all three claims.

The district court granted Seabee's motion with respect to the retaliatory discharge claim. It concluded the claim was filed beyond a 180–day limitation contained in Hansen's employment contract. The court also granted a directed verdict on the ICRA claim, finding that Hansen presented insufficient evidence regarding the existence of a disability. However, the district court denied the motion on the ADA claim. It found Hansen had introduced sufficient evidence to support a claim of disability discrimination under that statute.

Following the trial, the court entered judgment in favor of Hansen. In its written findings, the court observed:

> Tim testified that he could still perform his straightener job which did not require heavy lifting as the rods or cylinders would be lifted onto the straightener by an overhead hoist but that his back limitations would not allow him to perform other heavy lifting or bending jobs such as concrete work or painting with which he has had considerable experience in the past. There was no evidence Tim was severely restricted with respect to household chore activities which he routinely did not perform. In his work comp claim, Tim made no application for temporary or permanent disability nor was he ever seen by an

orthopedic surgeon with respect to his back and hip condition.

From this, the court concluded that Hansen

> was disabled under the definition of the ADA by having a physical impairment that substantially limited his working as a major life activity by reason of his inability to perform the certain class of jobs for which he previously had experience, i.e. concrete construction and painting.

Further, the court found that Hansen's June 27 lay-off constituted disability discrimination in violation of the ADA and awarded him (1) $17,106.66 in back pay, (2) $34,000 in front pay, (3) $50,000 in emotional distress damages, (4) $20,000 in punitive damages, and (5) attorney fees.

Seabee appealed.[1] It alleged a variety of errors, including the proposition that Hansen failed to establish he was disabled under the ADA. Hansen did not cross-appeal or otherwise rely upon his state claims to support the district court judgment. Consequently, our review is limited to the federal ADA claim.

## II. Standard of Review

 When reviewing the judgment of a district court after a bench trial, "our review is for correction of errors at law." *Arnevik v. Univ. of Minn. Bd. of Regents,* 642 N.W.2d 315, 318 (Iowa 2002) (citing *Equity Control Assocs., Ltd. v. Root,* 638 N.W.2d 664, 670 (Iowa 2001)); Iowa R.App. P. 6.4. " ' "The trial court's findings have the effect of a special verdict and are binding if supported by substantial evidence." ' 'Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion.' " *Arnevik,*

---

1. Appellate counsel did not represent Seabee at trial. Seabee was represented by different counsel in district court.

642 N.W.2d at 318 (citations omitted). In contrast, the trial court's legal conclusions are not binding, but we will construe them "broadly in favor of upholding the judgment." *Id.* (citing *Root,* 638 N.W.2d at 670).

## III. Disability Under the ADA

■ To establish a claim of disability discrimination, Hansen was required to prove (1) he had a disability under the ADA, (2) he was qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. *Kincaid v. City of Omaha,* 378 F.3d 799, 804 (8th Cir.2004) (citing *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1072 (8th Cir.1998)). Thus, our first inquiry is whether Hansen had a disability as defined by the ADA.

■ The ADA's definition of disability contains three prongs. *See* 42 U.S.C. § 12102(2) (2000). An individual has a disability if he or she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) be[en] regarded as having such an impairment." *Id.* Hansen claimed in the district court he was both "actually disabled" under the first prong and "regarded as disabled" under the third prong. The district court found only that Hansen was actually disabled due to a limitation on working. Nevertheless, we will consider both theories because "we may still affirm if there is an alternative ground, raised in the district court and urged on appeal, that can support the court's decision." *Fencl v. City of Harpers Ferry,* 620 N.W.2d 808, 811–12 (Iowa 2000) (citing *Israel v. Farmers Mut. Ins. Ass'n,* 339 N.W.2d 143, 146 (Iowa 1983)).

On appeal, Hansen claims he is disabled due to limitations on his ability to lift and work. With respect to lifting, the regarded as and actually disabled theories follow the same analysis because in either case, Hansen's impairment must substantially limit him in lifting, either in reality or due to the attitudes of others. *See* 42 U.S.C. § 12102(2). Similarly, when based on an alleged substantial limitation on working, both theories require the same analysis because both require a showing that the plaintiff either actually is precluded from a broad class of jobs, *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450, 468 (1999), or that the defendant regards him or her as precluded from a broad class of jobs, *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484, 492 (1999). Accordingly, Hansen's claims under the regarded as and actually disabled theories will be discussed together.

### A. Physical Impairment

■ In order to have a disability under the ADA, an individual must have a physical or mental impairment, real or imagined. 42 U.S.C. § 12102(2); *Sutton,* 527 U.S. at 490, 119 S.Ct. at 2150, 144 L.Ed.2d at 467. This determination is the first step in ascertaining whether an individual is disabled. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540, 553 (1998). The ADA does not define "physical or mental impairment," but the Equal Employment Opportunity Commission (EEOC) has issued regulations and interpretive guidance that define several of the concepts used in the statute. *See* 29 C.F.R. pt. 1630 (2000).[2] The EEOC regulations define a physical impairment as

---

**2.** There is some doubt as to whether these regulations are valid and entitled to defer-

ence. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 194, 122 S.Ct. 681,

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

*Id.* § 1630.2(h)(1). The parties do not dispute that Hansen's back injury constitutes a physical impairment.

**B. Major Life Activity**

■ The second step in establishing whether an individual has a disability under the ADA is to determine whether the impairment affects a "major life activity." *Bragdon*, 524 U.S. at 631, 118 S.Ct. at 2202, 141 L.Ed.2d at 553. Again, the statute does not define this concept, but the EEOC regulations list several examples of major life activities: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29

C.F.R. § 1630.2(i). The interpretive guidance adds "sitting, standing, lifting, [and] reaching" to this list and generally defines major life activities as "those basic activities that the average person in the general population can perform with little or no difficulty." *Id.* pt. 1630 app. § 1630.2(i).[3] In contrast, in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* the Supreme Court defined "major life activities" more narrowly as "those activities that are of central importance to daily life." 534 U.S. at 197, 122 S.Ct. at 691, 151 L.Ed.2d at 631. Moreover, the Supreme Court has cautioned that the phrases "substantially limits" and "major life activities" "need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.*

Although the EEOC lists working as a major life activity, the Supreme Court has not decided this issue and has noted "that there may be some conceptual difficulty in defining 'major life activities' to include work." *Sutton,* 527 U.S. at 492, 119 S.Ct. at 2151, 144 L.Ed.2d at 468.[4]

689, 151 L.Ed.2d 615, 629 (2002) (noting the uncertainty of "[t]he persuasive authority of the EEOC regulations" and "assum[ing] without deciding that they are [valid]"); *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 563 n. 10, 119 S.Ct. 2162, 2167 n. 10, 144 L.Ed.2d 518, 529 n. 10 (1999) ("[W]e assume, without deciding, that such regulations are valid, and we have no occasion to decide what level of deference, if any, they are due."); *Murphy,* 527 U.S. at 523, 119 S.Ct. at 2138, 144 L.Ed.2d at 491 ("[W]e assume, *arguendo,* that the Equal Employment Opportunity Commission (EEOC) regulations regarding the disability determination are valid."); *Sutton,* 527 U.S. at 479, 119 S.Ct. at 2145, 144 L.Ed.2d at 460 ("[N]o agency has been delegated authority to interpret the term 'disability.' "). Because we have relied on the EEOC regulations in construing the ADA before the Supreme Court expressed these doubts, *see Bearshield v. John Morrell & Co.,* 570 N.W.2d 915 (1997), to the extent we find them consistent with the statute, we will con-

tinue to do so until the Supreme Court decides otherwise.

3. We note that the interpretive guidance is entitled to even less deference than the regulations, assuming any deference is due at all. *See Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 899 n. 4 (10th Cir.) ("[W]hile the EEOC's Interpretive Guidance may be entitled to some consideration in our analysis, it does not carry the force of law and is not entitled to any special deference under *Chevron.*"), *aff'd,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). *Cf. Ass'ns Working for Aurora's Residential Env't v. Colo. Dep't of Transp.,* 153 F.3d 1122, 1127 n. 4 (10th Cir. 1998) (citations omitted).

4. One federal circuit judge aptly described these conceptual difficulties:

[I]f a person claims to be excluded from work because of his impairment, it is circular for him to answer when asked the na-

Indeed, even the EEOC has expressed reluctance to define "major life activities" to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* "[i]f an individual is not substantially limited with respect to *any other* major life activity."

*Id.* (quoting 29 C.F.R. pt. 1630 app. § 1630.2(j)). Because we are construing only the federal statute, and no federal court has specifically held that working does not qualify as a major life activity under the ADA, we will follow the lead of the Supreme Court and assume without deciding that it does. *See Toyota*, 534 U.S. at 200, 122 S.Ct. at 692, 151 L.Ed.2d at 632 ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today."); *Sutton*, 527 U.S. at 492, 119 S.Ct. at 2151, 144 L.Ed.2d at 469 ("Assuming without deciding that working is a major life activity . . . .").

## C. Substantially Limits

■ We next determine "whether the impairment substantially limit[s][a] major life activity." *Bragdon*, 524 U.S. at 631, 118 S.Ct. at 2202, 141 L.Ed.2d at 553. According to the Supreme Court, " '[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' " *Toyota*, 534 U.S. at 196, 122

S.Ct. at 691, 151 L.Ed.2d at 630 (quoting Webster's Third New International Dictionary 2280 (1976)). "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with [a major life activity] from qualifying as disabilities." *Id.* (citing *Albertson's, Inc.*, 527 U.S. at 565, 119 S.Ct. at 2162, 144 L.Ed.2d at 530).

The EEOC regulations advise:

The term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Further, the EEOC provides the following factors to consider in determining whether an individual's impairment substantially limits a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

ture of his impairment "exclusion from work."

. . . When "working" is used in this way, the existence of a disability will necessarily turn on factors other than the individual's physical characteristics or medical condition. To illustrate, suppose there is an economic downturn and unemployment is high. Then more people will be found to be disabled as compared with a period when the gross domestic product is growing and unemployment is low. Why? Because the less likely it is that a person can find work the more likely that he is substantially limit-

ed in the major life activity of working-that in other words he suffers from a disability. One must wonder whether people considered disabled in a poor economy can become not disabled if the economy turns around and more jobs become available. One must wonder as well how this can be squared with the ADA's express purpose of supplying "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1118 (D.C.Cir.2001) (Randolph, J., concurring) (citations omitted).

We first analyze whether there is substantial evidence that Hansen is substantially limited in any major life activity other than working. *See* 29 C.F.R. pt. 1630 app. § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working."). Hansen asserts he is substantially limited in the major life activity of lifting.

### 1. Substantially Limited in the Major Life Activity of Lifting

■ Although Hansen's physician never imposed a lifting restriction on him, Hansen testified that he did not believe he could lift fifty pounds or more. When asked if he could lift twenty-five pounds on a regular basis, he testified that he "would really have to try it first. Otherwise Im guessing." He further testified he would not have problems lifting ten pounds.

The federal courts have consistently held that a limitation on the amount of weight a person can lift does not substantially limit the major life activity of lifting. *See, e.g., Brunko v. Mercy Hosp.,* 260 F.3d 939, 941–42 (8th Cir.2001) ("[A] general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA.") (citing *Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998), *cert. denied,* 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999); *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997)); *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240–41 (10th Cir. 2001) (holding that a forty-pound lifting restriction was not substantially limiting); *Marinelli v. City of Erie,* 216 F.3d 354, 364 (3d Cir.2000) (holding that a plaintiff who estimated he could lift no more than ten pounds was not "sufficiently different from the general population such that he is substantially limited in his ability to lift");

*Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644 (2d Cir.1998) (holding that an inability to lift "very heavy objects" did not substantially limit a major life activity); *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) ("[W]e hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."), *cert. denied, Williams v. Avnet, Inc.,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997), *and abrogated on other grounds by Baird ex rel. Baird v. Rose,* 192 F.3d 462 (4th Cir.1999); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir. 1996) (holding that the need to avoid heavy lifting did not amount to a substantial limitation on the major life activity of lifting); *see also Gillen v. Fallon Ambulance Serv., Inc.,* 283 F.3d 11, 22 (1st Cir.2002) ("[S]trength varies widely throughout the population, and if a restriction on heavy lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the elderly, the weak, and the out-of-shape."). Even when the plaintiffs impairment also restricts him or her in additional activities such as bending, courts have refused to find a disability. *See, e.g., Wood v. Crown Redi–Mix, Inc.,* 339 F.3d 682, 685–86 (8th Cir.2003) (holding a plaintiff who could not bend more than eighty degrees or lift more than fifty pounds was not disabled); *Nuzum v. Ozark Auto. Distribs., Inc.,* 320 F.Supp.2d 852, 868–70 (S.D.Iowa 2004) (holding a plaintiff who was "restricted from lifting more than 10 pounds constantly, more than 20 pounds frequently, and more than 40 pounds occasionally" and who was restricted in various activities involving use of his arm was not substantially limited in any major life activity); *Wordekemper v.*

*W. Iowa Homes & Equip., Inc.*, 262 F.Supp.2d 973, 983 (N.D.Iowa 2003) (holding a plaintiff with a lifting restriction and a restriction on bending was not disabled).

■■■ Moreover, after *Toyota*, it is clear that in order "to be substantially limited in [lifting], an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most peoples daily lives." 534 U.S. at 198, 122 S.Ct. at 691, 151 L.Ed.2d at 631; *see Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir.2002) ("*Toyota's* point was that an inability to perform occupation-specific tasks does not necessarily show an inability to perform the central functions of daily life, and that analysis applies equally to [lifting restrictions]. An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life." (Citations omitted.)); *see also Wood*, 339 F.3d at 685–86 (holding, when the plaintiff could "perform household tasks such as laundry, washing dishes, and taking out trash," that his fifty-pound lifting restriction and inability to bend more than eighty degrees were "insufficient to sustain an ADA claim given the high bar set by *Williams*"); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1025 (8th Cir.2003) (applying *Toyota* to "the major life activities of gripping, reaching, lifting, standing, sitting and walking"; holding that the plaintiff was not substantially limited because he "cited no examples of how the limitations impacted tasks central to most peoples daily lives").

There is no evidence in the record that Hansen's impairment impacted lifting tasks central to most people's daily lives e.g., "household chores, bathing, and brushing one's teeth." *Toyota*, 534 U.S. at 202, 122 S.Ct. at 693, 151 L.Ed.2d at 634. In fact, the district court specifically noted:

"There was no evidence Tim was severely restricted with respect to household chore activities...." Thus, we conclude the court's ruling that Hansen was disabled cannot be upheld on the basis that he was substantially limited in lifting.

**2. Substantially Limited in the Major Life Activity of Working**

■■■ Reflecting the uncertainty as to whether working even qualifies as a major life activity, the Supreme Court has held "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491, 119 S.Ct. at 2150, 144 L.Ed.2d at 468. Under the EEOC's ADA regulations, substantially limited in the major life activity of working

> means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The regulations provide additional factors to consider in determining whether an individual is substantially limited in working:

> [1] The geographical area to which the individual has reasonable access;
>
> [2] The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> [3] The job from which the individual has been disqualified because of an im-

pairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii).

To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individuals skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. *Sutton*, 527 U.S. at 492, 119 S.Ct. at 2151, 144 L.Ed.2d at 468.

The evidence to support the conclusion by the district court that Hansen was substantially limited in working consisted solely of his own testimony that he felt he could not do work that involved extensive bending or heavy lifting. There was no medical evidence regarding Hansen's ability to lift and bend, and Hansen himself was unsure as to how much he could lift and which jobs he could do.

■ A "class" of jobs connotes "a group, set, or kind [of jobs] marked by a common attribute." Webster's Third New International Dictionary 416 (2002); *see also* 29 C.F.R. § 1630.2(j)(2)(B) (defining a "class of jobs" as "jobs utilizing similar training, knowledge, skills or abilities" to "[t]he job from which the individual has been disqualified because of an impairment" "within that geographical area"). The present record leaves the class of jobs in which Hansen worked at Seabee unclear. While Hansen testified about the process of operating a straightening machine, the record is devoid of any evidence

regarding the attributes of the job, such as required training, knowledge, skills, or abilities. Moreover, although Hansen claimed he could not work as a roofer if he had to carry shingles, could not paint water towers, would not be able to perform in the concrete trade, and could not work on an assembly line if it required continuously lifting "real heavy material," there is absolutely no evidence in the record as to the attributes or availability of any of these positions in Hansen's geographical area. Thus, there is no evidence that would support a finding that Hansen is "unable to work in a broad class of jobs," *Sutton*, 527 U.S. at 491, 119 S.Ct. at 2150, 144 L.Ed.2d at 468, let alone that these positions constitute a class of jobs.

> The ADA requires a plaintiff in [Hansen's] position to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class of jobs; that is, the total number of such jobs that remain available to the plaintiff in such a class or range in the relevant labor market must be sufficiently low that he is effectively precluded from working in the class or range.

*Duncan v. Wash. Metro. Transit Auth.*, 240 F.3d 1110, 1115–16 (D.C.Cir.2001) (en banc), *cert. denied*, 534 U.S. 818, 122 S.Ct. 49, 151 L.Ed.2d 20 (2001) (citing *Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151, 144 L.Ed.2d at 468); *see also Gelabert–Ladenheim v. Am. Airlines, Inc.*, 252 F.3d 54, 62 (1st Cir.2001) (holding that the plaintiff failed to establish she was disabled when she "produced only generic evidence of her work restrictions" and "offered no more than conclusory statements" "as to the number and types of jobs she can or cannot perform in the relevant labor market"); *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1018 (7th Cir.2001) (holding

that some "evidence of the demographics of the relevant labor market" is required).

While we do not hold that expert vocational testimony is always required to establish a substantial limitation on working, the record in this case is insufficient to support the conclusion that Hansen was unable to perform a broad class of jobs. The district court held that Hansen was disabled because he was unable to perform the "class of jobs" of "concrete construction and [water tower] painting." However, there is no evidence that these positions constitute a class of jobs under the ADA. *See Philip,* 328 F.3d at 1024 ("Inability to perform one particular job does not constitute a substantial limitation on working. Instead, a plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities." (Citations omitted.)); *accord Brunko,* 260 F.3d at 942 (holding that one who is precluded from working a narrow range of jobs is not disabled). By failing to present evidence regarding the relevant class of jobs, Hansen failed to prove either that he was substantially limited in working or that Seabee regarded him is substantially limited in working. *See Sutton,* 527 U.S. at 491–93, 119 S.Ct. at 2151–52, 144 L.Ed.2d at 468–69 (holding that the plaintiffs failed to prove they were regarded as substantially limited in working because they failed to show "they [we]re unable to work in a broad class of jobs"); *Rockwell Intl. Corp.,* 243 F.3d at 1018 (holding that the EEOCs regarded-as-disabled theory failed "with no evidence of the demographics of the relevant labor market"); *Duncan,* 240 F.3d at 1115 (vacating jury verdict on the plaintiff's actually disabled claim because he failed "to produce some evidence of the number and types of jobs in the local employment market"). Accordingly, the decision of the district court that Hansen was disabled must be reversed.

## IV. Conclusion

Hansen produced insufficient evidence to establish that he was disabled under the ADA. Consequently, his disability discrimination claim fails. *See Kincaid,* 378 F.3d at 804. It is unnecessary to consider the other issues raised by appellants.

**REVERSED.**