# IN THE COURT OF APPEALS OF IOWA

No. 22-1874
Filed January 24, 2024

**GRAY'S LAKE ACTIVITIES CENTER LLC,**
    Plaintiff-Appellant,

**vs.**

**SANI ENTERPRISE LLC,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


An activities center appeals the amount awarded for damages to its parking lot caused by a painting contractor's boom truck. **AFFIRMED.**


Jeffrey M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant.

Bryant Hickie and Michael Carmoney of Carmoney Law Firm, PLLC, Des Moines, for appellee.


Considered by Tabor, P.J., and Buller and Langholz, JJ.

**TABOR, Presiding Judge.**

This action stems from damage to the parking lot and sidewalk of an activities center caused by a boom lift used to paint a neighboring building. The question is: how much damage did the boom lift cause? Because the district court properly approximated the area of damage from photographs and testimony offered into record, we affirm.

## I. Facts and Prior Proceedings

Once part of a business school campus, Gray's Lake Activities Center LLC (Gray's Lake) is now a practice gym leased to the Iowa Wolves, a professional basketball team. A neighboring apartment complex hired Sani Enterprise LLC (Sani), a property services management company, to paint its exterior in 2020.

Sani brought in a large boom lift to reach the heights of the building. Without permission from Gray's Lake, a Sani employee drove the lift onto the south side parking lot and sidewalk at the front entrance of the gym. But the boom could not make it back to the apartments without causing damage. Wolves' president Ryan Grant watched the events unfold. He thought: "There was no way that boom truck was going to be able to get back there." And he was right. It did not get by the gym entrance before it started "digging into the ground, and they had to turn around and get it back. They could not navigate through there." Both Grant and Gray's Lake property manager Michael Neary viewed the damaged concrete.

Sandro Tadic, the owner of Sani, did not deny the boom truck caused damage but disputed how much his company owed Gray's Lake. Gray's Lake claimed the cost of repairs was $14,900—the amount of an invoice from Economic Concrete Services (ECS) reflecting repairs to 1800 square feet of the parking lot

for $12,600 and 260 square feet of sidewalk along with sixteen feet of curb for $2300.[1]  When Tadic declined to pay those amounts, Gray's Lake sued.

At a bench trial, Neary testified that before the boom truck event, the gym's parking lot was not "dangerous or nonfunctional."[2]  But when shown an aerial photograph of the parking lot after the repairs, Neary testified that he did not know what concrete Gray's Lake replaced beyond the area damaged by Sani.  In his words, "I can't pin that down."  For its part, Sani offered Exhibit E showing the original quote from ECS was to repair "5X5 & 20X3" feet of sidewalk, sixteen feet of curb, and "tear our 4X12 asphalt & replace with concrete" for $2600.  Neither party offered a witness from ECS.  On photographic exhibits offered by Gray's Lake, both Grant and Tadic marked where they believed the boom lift damaged the parking lot.

The district court found that Sani was liable for repairs through the doctrine of promissory estoppel; a contract with Gray's Lake was implied in fact.  As for the cost of those repairs, the court rejected the request from Gray's Lake for the full amount of $14,900 that was invoiced.  It reasoned that the invoice established "what was repaired, but not what was damaged by the boom truck."  The court then calculated the area of damage based on photographs and markings made by Tadic and Grant.  It also used a sport utility vehicle (SUV) pictured in one of the exhibits to estimate the square footage of the area.  As its bottom line, the court

---

[1] Gray's Lake also hired ECS to fix cement that was not damaged by the boom truck and paid another $9600 for repairs that it did not seek from Sani.
[2] Wolves' president Grant agreed that the parking lot and sidewalk were in decent condition before the event, saying he would not have let his athletes risk injury if the parking lot and sidewalk had been in such disrepair.

awarded Gray's Lake $2625 for the parking lot damage (covering 375 square feet) and $2300 for the walkway and curb, plus interest. Gray's Lake appeals.

## II. Scope and Standard of Review

Our standard of review for a bench trial depends on how it was tried. *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 642 (Iowa 2019). This case was tried at law, so we review for the correction of legal error. *Id.* We are bound by the district court's findings if they are supported by substantial evidence. *Collins Tr. v. Allamakee Cnty. Bd. of Supervisors*, 599 N.W.2d 460, 463 (Iowa 1999). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Hansen v. Seabee Corp.*, 688 N.W.2d 234, 237 (Iowa 2004) (cleaned up). Although the court's legal conclusions do not bind us, we "construe them broadly in favor of upholding the judgment." *Id.* (cleaned up).

## III. Analysis

Gray's Lake asks us to remand this case to the district court to award "damages consistent with the evidence presented at trial." It argues that "the court's finding as to the size of the Sani-caused damage to the parking lot lacks all foundation and cannot form the basis of an award." In its view, the award for the parking lot damage should have been $12,600, rather than $2625. It also argues that the court ignored credible testimony. We disagree with both arguments.

A. *Did the district court err in estimating the area of damage?*

In deciding the damages amount, the court points to a glaring gap in the evidence—the lack of measurements delineating the area damaged by Sani. The court also lacked any testimony comparing the areas referenced in the ECS quotes

to the photos of the parking lot. And neither party presented a witness from ECS. The court was "left to estimate the area of damage from the photographs and markings made by Tadic and Grant."

As its starting point, the court noted that the parking lot already had a large amount of wear and tear before the incident. The court then worked through the available evidence to decide that the boom lift damaged more than the forty-eight square feet referenced in the original quote from ECS but less than the 1800 square feet in the final invoice. The court settled on a middle ground: "Based on its finding that 375 square feet of the parking lot was damaged, the Court awards $2,625 for such damages to the parking lot in addition to the $2,300 awarded for damage to the walkway and curb."

The court described its process:

> [B]ased on the size of the cars in the photo, an estimate of 4 feet by 12 feet for the size of the square Tadic drew on the parking lot seems reasonable. However, just because that was Tadic's estimate of the size of damage to the lot does not mean the actual damage was so limited. Using the nearby vehicle as a benchmark, the Court estimates the size of the area noted by Tadic as 150 square feet and the size of the area noted by Grant as 375 square feet. Both of these areas are substantially larger than the 48 square feet noted in Exhibit E, but far less than the 1800 square feet noted in Exhibit 1. Grant's trial testimony discussed only one rut created in the parking lot. He also refers to the damaged area in the parking lot as being like a "speed bump."

From there, the court assumed:

> [T]he SUV pictured in Exhibit 5 p 3 is 15 feet long and 6 feet wide, it appears the sidewalk area outlined by Tadic would be approximately 300 square feet. Madsen inspected the sidewalk damage and prepared a quote for two sections of sidewalk: one that was 325 square feet and one that was 225 square feet. Exhibit 4. Given that the area of sidewalk repaired in Exhibit 1 and sought to be assessed to Defendant is 260 square feet, the Court has no difficulty assessing that line item for $2,300 to the Defendant.

On appeal, Gray's Lake objects to the court's estimations, quoting *Clinton National Bank v. City of Camanche* for the proposition that the trial judge "must not consider his observations as evidence." 251 N.W. 2d 248, 251 (Iowa 1977). Gray's Lake characterizes the court's estimate of the width of the rectangles and its reference to the width of an SUV as the court bringing in its own observations. The comparison is not apt. In *Clinton National Bank*, the supreme court cautioned against a judge conducting a "self-initiated inspection tour" of a residence to determine lot lines. *Id.* By contrast, the court here did not make its own observations but relied on the photographic evidence and testimony in the record. Plus, a court also may take judicial notice of matters that are generally known. *See State v. Stevens*, 719 N.W.2d 547, 550 (Iowa 2006); *see also* Iowa R. Evid. 5.201(b)(1). The approximate size of the SUV falls into that category. *See Robinson v. Richardson*, 484 S.W.2d 27, 29 (Mo. Ct. App. 1972) (taking judicial notice of the width of modern cars).

As Sani argues, Gray's Lake did not meet its burden of proving that it could recover damages for the parking lot in the amount of $12,600. *See Data Documents, Inc. v. Pottawattamie Cnty.*, 604 N.W.2d 611, 616 (Iowa 2000) ("[T]he party seeking damages bears the burden of proving them . . . ."). But the damages awarded by the district court fell within the evidence presented. *Id.*; *see also PRO Com. LLC v. Mallory Fire Prot. Servs., Inc.*, 15-1420, 2016 WL 7395728, at *3 (Iowa Ct. App. Dec. 21, 2016) ("Damages can be established in part or *in whole* by witness testimony." (Emphasis added.)). We find substantial evidence in the record to support the court's damage award.

B. *Did the trial court err in ignoring credible testimony?*

In another critique of the district court's analysis, Gray's Lake claims the court "ignored evidence it identified as credible." It points to this passage from the ruling: "The court finds that Plaintiff's witnesses who had personally experienced the parking lot and sidewalk prior to the damage [were] more credible and convincing than Defendant's witnesses." From there, Gray's Lake claims that the court should have accepted Neary's testimony that the parking lot damage amounted to $12,600.

But as Sani points out, the court's general credibility finding did not mean that it had to accept every fact to which a witness testified. *See Est. of Hagedorn ex rel Hagedorn v. Peterson*, 690 N.W.2d 84, 88 (Iowa 2004) ("[T]he credibility of witnesses is peculiarly the responsibility of the fact finder to assess."). And Neary admitted that he could not identify in the photographs which area of the parking lot that Gray's Lake elected to replace was damaged by the boom lift. Neary only testified that ECS invoiced him for the overall cost of the repairs. His testimony left the court to estimate the area damaged from other evidence. The court had to fill the gaps between the evidence presented and was able to do so. Thus, we affirm.

**AFFIRMED.**